GEORGE A NUTWELL *vs.* ANNE TONGUE'S LESSEE.

EVIDENCE,—ADMISSIBILITY OF.—Where the specific purposes for which testimony was offered, were stated by the party offering the same, if admissible for any of the purposes stated, a general objection to its admissibility was properly overruled.

EJECTMENT: EVIDENCE, ADMISSIBILITY OF: ADVERSE HOLDING.—In an action of ejectment, the following facts were admitted: B. H. died in 1825, seized of the tract of land, then his dwelling plantation, located on the plats by the defendant, leaving a will, whereby he devised to his son J. and his heirs, one hundred and forty-seven acres, to be laid off from the north end of his dwelling plantation, in trust for his daughter E. for life, and after her death in trust for her issue, and in default of issue, for J. and his heirs absolutely. E. died without issue, in 1839, having survived her husband, leaving as her heirs at law, her sister, A. T., the lessor of the plaintiff, and the children of J., who, had died in her lifetime; whereupon the children of J. entered into

possession of, and claimed title to the land in controversy,—which is located by the plaintiff and shown to be part of said dwelling plantation—which title and possession have since vested in the defendant. The plaintiff, at the trial, offered to prove by J. F. W., that after the death of B. H., at the instance of E. and J., with the co-operation of T. T., the husband of the said A. T., he laid off the land included in the second of the plaintiff's locations, as and for that part of her late father's dwelling plantation devised to her as aforesaid, and that she thereupon entered upon the same, and remained in possession thereof until 1839. The evidence thus offered being objected to by the defendant,—HELD:

That the evidence offered was admissible to show, that E. entered upon the premises in controversy, as devisee of her father, B. H., and thus to negative the theory that the holding of E. was adverse to the plaintiff's title.

ESTOPPEL.—The defendant in the above cause, offered to read to the jury a deed from the lessor of the plaintiff, A. T., to W. H. H., dated April 16th 1853, for the purpose of showing that A. T. was estopped from denying that the parcel of land lying north of the fifth line of the plaintiff's second location, was the land of one W. F. S., at the date of that deed.—HELD:

That neither the defendant nor any one under whom he claims, was a party to the deed, and he cannot therefore claim the benefit of any recital it may contain by way of estoppel; whatever effect such a recital may have between the parties, they are not binding upon them in a controversy with a stranger.

————: LOCATION: PARTITION.—It being shown that the lands in controversy formed a part of the dwelling plantation of Benjamin Harrison, it was not material for the plaintiff to prove that the survey made by J. F. W. was strictly in conformity with the provisions of the will, or that under the circumstances under which it was made, it would have concluded E. in her lifetime, as a valid and binding partition under the will.

The finding of the jury that the land surveyed by J. F. W., was laid off, as and for the 147 acres devised to J. in trust, and that it was accepted and enjoyed by E. during her lifetime, as and for, or in lieu of her share in the dwelling plantation; and the further finding that the same is correctly located on the plats,—must, under the concessions in the case, entitle the plaintiff to recover a moiety of the same.

ADVERSE POSSESSION: PRIVITY: PRESCRIPTION.—That under the facts above stated, the possession of E. was not adversary to the title of the lessor of the plaintiff, but was under and in privity with the estate of B. H., under whom the lessor of the plaintiff claims, and the time which elapsed after her death in 1839, to the institution of this suit in 1855, was not sufficient to bar the right of the plaintiff to recover, even if the possession had been adversary during that time.

SET-OFF IN EJECTMENT.—There appears to be no authority or precedent to warrant the application of the doctrine of set-off to an action of Ejectment.

APPEAL from the Circuit Court for Anne Arundel Co.

*Ejectment* brought, April 2d, 1855, by the appellee against the appellant for a tract of land called "Holly Hill." The declaration contains two counts, the first for the whole of this tract, and the second for an undivided moiety thereof. The case is now before this Court for the third time. The decision on the first appeal is reported in 13 *Md. Rep.*, 415; on the 2d, in 17 *Md. Rep.*, 212. In each of those trials the judgment was for the defendant below, and was reversed by this Court, and a *procedendo* awarded. In the present trial the judgment was for the plaintiff, and this appeal is taken by the defendant. In each of the former trials the defendant's plea was simply *non cul.* When the case went down under the last *procedendo* the defendant took defence on warrant, and a warrant of re-survey was issued, under which locations were made by both parties, and plats, explanations and certificates of survey made and returned. In the course of the trial four exceptions were taken by the defendant and one by the plaintiff.

*1st Exception.*—The plaintiff offered in evidence to the jury the plats and explanations returned in the cause, and proved that the location made thereon on his part, is a correct location of the land in controversy, according to the metes and boundaries set forth in the declaration, and also offered in evidence the location made by the defendant of the dwelling plantation of B. Harrison, deceased, with the explanation thereof.

The defendant then offered in evidence to the jury the location by him made on said plats with the explanations thereof, and proved that said locations were rightly made.

The plaintiff then read in evidence a copy of the will of B. Harrison, deceased; and also read an agreed statement of facts, in which, as part of the plaintiff's case, it was admitted: that B. Harrison died on or about the 1st of November 1825, seized of all the land included in the

defendant's first location, being his dwelling plantation, and that he left a will duly executed to pass real estate, a copy of which had previously been offered in evidence; that said B. Harrison at the time of his death left three children, his heirs at law, viz: Anne Tongue, the lessor of the plaintiff, then the wife of Thomas Tongue, Eleanor Stephenson, then the wife of John Stephenson, and John Harrison, who died in 1832, leaving children; that John Stephenson died in 1828, and Eleanor Stephenson died in 1839, without issue, and never having had issue, and intestate, leaving the said Anne Tongue and the children of John Harrison her heirs at law, and the said Thomas Tongue died in 1828. As part of the defendant's case, it was admitted by the same agreement: that after the death of Eleanor Stephenson, the children of John Harrison entered into possession and claimed title to the land in controversy in this case, and remained possessed, so claiming until their possession was transferred to Charles C. Stewart, in 1840, and that all their title and possession became vested in the defendant by *mesne* conveyances under said children and Charles C. Stewart, copies of which then follow:

1st. A deed dated the 22nd of March 1849, from Charles C. Stewart and wife to Edward Hall, which recites that the said Charles C. Stewart had purchased from Somerville Pinckney, trustee, under decree of the Chancellor for the sale of the real estate decreed to be sold in a cause in the High Court of Chancery, wherein Lucy Anderson and others were complainants, and Napoleon B. Harrison, and others, defendants, the tract of land called "Holly Hill," which sale was finally ratified and confirmed, and all the purchase money paid; and then, for certain considerations therein expressed, proceeds to convey the said tract called "Holly Hill," "containing about 147 acres more or less," to the said Edward Hall in trust, for the sole and separate use of Anne Stewart, wife of Dr. Wil-

liam F. Stewart, with power to the said Anne to transfer and dispose of the same by deed or will.

2nd. A deed dated the 1st of January 1854, from Edward Hall, William F. Stewart and Anne Stewart, his wife, to George W. Nutwell, which recites the previous deed of trust to Edward Hall, and the power of disposition therein reserved to the said Anne Stewart, and that she is desirous to sell the property to Nutwell, (the defendant,) and to invest the proceeds for her own use, and that the other parties to the deed, believing this sale to be for her advantage and that of her husband and children, at her instance, have agreed to unite in the execution of the deed, and then proceeds to convey the said tract of land called "Holly Hill," described as "containing about 147 acres of land more or less," to the said George W. Nutwell in fee.

It was agreed that these deeds should be read in evidence on the part of the defendant, subject to all exceptions as to their admissibility and effect during the trial, and it was further admitted, that on the 16th of April 1853, William F. Stewart was in possession of the land now in controversy, claiming the same in right of his wife, Anne Stewart, named in the deed from Stewart and wife to Hall. It was further agreed, that the plaintiff's pretensions extend to all the lands included in her first location and explanations, and that the defendant locates his defence and pretensions for all said land so included in the plaintiff's location and explanations, and that the possession of the land in dispute, by the defendant, is correctly described in the defendant's 2nd and 3rd location.

The will of B. Harrison, read in evidence by the plaintiff, devises to his son, John Harrison, his heirs, executors and administrators, in trust, for the use of his daughter, Eleanor Stephenson, for life, &c., all the following real estate to wit: "One hundred and forty-seven acres of

land, to be laid off from the north end of my dwelling plantation, so as to include the dwelling house, with the outer buildings about it, and to include also, at least one of the tobacco houses."

The plaintiff then offered to prove by John F. Wilson, that very recently after the death of B. Harrison, and whilst Eleanor Stephenson was a *feme covert*, she and John Harrison procured witness to lay off the land included in the plaintiff's second location, as and for that part of her late father's dwelling plantation which was by his will devised in trust for her as aforesaid, and that immediately thereafter, she entered upon the land included in said location, claiming the same under said will, and remained in possession thereof, until her death in 1839. That Thomas Tongue, the husband of Anne Tongue, took part in this location, and at or about the time of the entry of the said Eleanor into the parcel so laid off to her, he and his wife Anne Tongue entered upon the residue of the said dwelling plantation, claiming the same under the will of B. Harrison, and that said residue has ever since been held in possession by her or by persons claiming under her.

The plaintiff's counsel being required to state the purposes of this offer, said that it was offered as evidence:

1st. To show that the said Eleanor entered upon said parcel of land, and held possession thereof, during her lifetime, under color of her title as devisee of the said testator.

2nd. And if the evidence so tendered should be admitted, and if it should be proved that said location or partition was made as offered as aforesaid, he should insist that the location so made, was obligatory on the said John Harrison, and all parties claiming under or by representation from him.

And he further stated that the said evidence was tendered distinctly and separately for each of said purposes,

and submits that if admissible for either purpose, it shall
be admitted with such limitations as to its effect, as the
Court shall determine.

The defendant objected to the admissibility of said
offered evidence or any part thereof, for the purposes
above stated, which objection the Court (BREWER, J.)
overruled and allowed the said evidence to go to the jury,
and to this ruling the defendant excepted.

*2nd Exception.* The plaintiff then placed the said Wil-
son upon the stand and proved by him, that shortly after
the death of B. Harrison, he was sent for to the house of
said Harrison, and on going there saw John Harrison,
Eleanor Stephenson and Mrs. Tongue, who instructed him
to survey and lay off 147 acres from the dwelling Planta-
tion of said B. Harrison, deceased; they were talking
about the survey, and he supposed they had settled between
themselves where it was to be, but he cannot be particu-
lar as to what they said; he then went out with Mr.
Tongue to make the survey, and the others remained in
the house; that he was not familiar with the will of B.
Harrison, and that he proceeded to make the survey out
of the presence of John Harrison and Eleanor Stephenson,
and ran the lines from the beginning at A, and thence to
the objects called for in his written certificate of survey,
made part of his evidence.

This certificate gives the beginning, calls, courses and
distances of the land so surveyed. There are four calls
in this survey, 1st, the beginning at a post in the fork of
the road, one of which forks leads to the swamp, and the
other to Tracy's landing; 2nd, a gum tree; 3rd, a post a
few perches from a ditch, and 4th, the land now held by
Wm. Ennis. The 1st, 2nd and 3rd lines are run by
course and distance only. The certificate certifies that
land surveyed contains and is now laid down for "147
acres, being the land devised by Benjamin Harrison to
his daughter Eleanor Stephenson." The plaintiff then

54    v. 22.

further proved by this witness, that being unacquainted with the lines of said dwelling plantation, he ran the survey in the manner and to the objects indicated and directed by Thomas Tongue, the husband of the plaintiff's lessor, and that on the survey in this cause he pointed out, the 1st, 2nd and 3rd boundaries of his survey to the surveyor, and the same are correctly located by him on the plats in this cause in the plaintiff's second location; that after he had made the survey, he made out a plat and certificate of the same, which he returned to Mrs. Stephenson, which are the same before referred to, and which at the instance of the plaintiff's counsel he read to the jury; that after this survey Mrs. Stephenson entered upon possession of the land so surveyed and laid off, and remained in possession of the same, by herself or her tenants until her death, and that Mrs. Tongue took possession of the residue of said dwelling plantation.

On cross-examination, this witness proved that he was directed to lay off 147 acres of land; that he never had instructions or authority to lay off any less number of acres; that Thomas Tongue alone went with him into the field, and accompanied him on the survey and pointed out the lines which he was to run and calls which he was to obey, and he ran the lines as Tongue directed him; he does not recollect that he had any direction to lay off this 147 acres from the west end of the dwelling plantation, and he was not acquainted with the outlines of said plantation; that when the survey was returned, Mrs. Stephenson paid him for his services; that John Harrison, at that time, resided in Virginia, and witness had no knowledge whether he or Mrs. Stephenson was ever informed that the survey so made by witness did not contain 147 acres. On being shown the location of his survey on the plats in this case, and his attention being called to the difference in quantity and in figure between them, witness says there is a difference in these respects for which he cannot

account; that there must be a mistake in his survey, but he cannot account for it; that he did not chain the 6th line of his survey because the ground was swampy; that he did not have the will of B. Harrison before him when he made his survey, and had never read it, and if he had had the same before him, and had known the outlines of the whole dwelling plantation, and had been directed to lay off the 147 acres from the north end thereof, he would have laid it off differently from the location of the same in his survey; that he cannot say whether all the lines of his survey are the same as those located on the plats in this cause, he did not go with the chain carrier to the third corner where the call is for the land of Wm. Ennis, and did not know the lines of Ennis' land, never saw them run, and he went to the said land as directed and pointed out by Thomas Tongue.

On further examination by the plaintiff, this witness proved that in 1825, the land located as the 58 acres and 2 roods, was, and at this time is of less value than the part of the land included in witness' survey which lies to the south of the line on the plat crossing the whole tract, cutting off 147 acres to the north end of the whole tract as located by the defendant's 6th location.

The plaintiff further proved by Thomas J. Hall, that B. Harrison was in possession of said dwelling plantation for more than twenty years before his death, and that after his death, Mrs. Tongue entered into possession of a part of said plantation, and held it until 1853, when she sold it to Wm. Hall, who now holds it, and at the time Mrs. Tongue so took possession, Mrs. Stephenson entered into possession of the residue of said plantation, and remained possessed thereof till her death, and the defendant is now in possession of said part; that she died after her husband, and without issue; that the whole plantation was in the lifetime of the deceased, and for many years thereafter called "Holly Hill."

The plaintiff here rested his case, and the defendant then called Charles C. Stewart, and proved by him that he purchased the land in dispute, in 1839, and went into possession thereof, on the 1st of January 1840, having received possession from Benjamin Tongue, avowedly the tenant of Eleanor Stephenson; that on the 16th of April 1853, William F. Stewart, the husband of Anne Stewart, was in possession of the lands in dispute, claiming in right of his wife, the said Anne, under the provisions of the deed of trust from witness to Edward Hall, heretofore read in evidence. The defendant then offered to prove by this witness that Mrs. Tongue congratulated him on his purchase of the lands in dispute, which purchase he made in 1839, from Somerville Pinckney, as trustee appointed by the High Court of Chancery to sell the real estate of John Harrison's heirs, and this offer is made for the purpose, in connection with other proof to be adduced, to show that the defendant and those under whom he claims, including witness, held the exclusive possession of said lands, with the knowledge and privity of Mrs. Tongue, the plaintiff's lessor. But the plaintiff objected to the said offered evidence, and the Court refused to permit the same to be given to the jury, and to this ruling the defendant excepted.

*Plaintiff's Exception.* After the evidence stated in the preceding exceptions, made part hereof, the defendant offered in evidence the deeds from Anne Tongue to Wm. H. Hall, of the 26th of November 1831, and the 16th of April 1853, located by the defendant on the plats in this cause, for the purpose of showing that the plaintiff's lessor claimed, and conveyed all the residue of the land of which B. Harrison died seized, save and except the land in dispute. The plaintiff objected to the reading of these deeds, and at the same time he offered to admit that the lessor of the plaintiff before the commencement of this action, claimed and had conveyed to Wm. H. Hall,

all these parts of said dwelling plantation which are included in the defendant's fourth and fifth locations. But the Court overruled the objection and allowed the deeds to be offered in evidence for the purpose above stated, and to this ruling the plaintiff excepted.

It was agreed that any facts referred to in this exception may be used in the Court of Appeals on the defendant's appeal in the same manner as if embodied in the defendant's exceptions, or any of them.

*3rd Exception.* After the evidence given in the preceding exceptions, made part hereof, the defendant under the ruling in the plaintiff's exception, read in evidence, and for the purpose stated in the offer in said exception the following deeds:

1st. A deed dated the 26th of November 1831, from Anne Tongue to Wm. H. Hall, conveying 58 acres of land, more or less.

2nd. A deed dated the 16th of April 1853, from Anne Tongue to Wm. H. Hall, conveying by metes and bounds, courses and distances, 185 acres, more or less. In this deed and in the part thereof describing the land by metes and bounds, is the following description: "then north three degrees west fifty-two and three-quarter perches to a large gum tree at the corner of William F. Stewart's land, then with the lines of said Stewart south eighty-two and a half degrees west, one hundred and thirty-two and one-quarter perches, to a stone placed about sixty-six feet west of Kendall's Branch."

The defendant further proved by Thomas J. Franklin, that Mrs. Stephenson left the dwelling house and plantation of her father some time in the year 1830 or 1831, and removed to Baltimore, where she continued to live till her death, and only occupied the lands in dispute by her tenants.

The defendant then offered to read in evidence the deed from Mrs. Tongue to Wm. H. Hall dated the 16th of

April 1853, located by the defendant on the plats in this case, for the purpose of showing that the said Anne Tongue is *estopped* by said deed from denying, that the land lying north of the line on said plats from the gum tree to the stone as located on said plats for the fifth line of the plaintiff's second location, was the land of William F. Stewart, at the date of said deed. But upon objection made by the plaintiff, the Court refused to allow said deed to go to the jury for the purpose for which it was offered, and to this ruling the defendant excepted.

*Robert J. Brent, A. Randall* and *O. Miller*, for the appellant.

1st. The first important question in the case, arises upon the peculiar wording and effect of the will of B. Harrison, in relation to the land in controversy. That will directs "one hundred and forty-seven acres of land to be laid off from the north end of my dwelling plantation, so as to include the dwelling house with the other buildings about it, and to include also, at least one of the tobacco houses." Now this devise cannot of itself operate to convey or pass the legal title to any portion of the testator's real estate. Until located and laid off in conformity to the will, it was a mere float, to which the devisee could assert no title in a Court of Law. It is to be laid off from the north end of the plantation, and is to contain 147 acres. A proceeding in equity was the only mode, by which a location could be given to this *float*, and certainty, fixedness, and such operation, as would pass a legal title under the will. If we are correct in this positon, it strikes at the root of the case, and the rulings of the Court in the first exception, admitting the evidence of Wilson to prove a location *in pais*, and in granting the plaintiff's third, fourth and sixth prayers, and in refusing to grant the defendant's first, second, third, fourth, sixth and eighth prayers were erroneous.

This position, we confidently insist, is correct, and the result will be, that if sustained by the Court, the plaintiff will fail in her action, and substantial justice will, at last, be brought out, and the obvious intention of the testator be made to prevail over technical rules of construction. In support of the position here laid down, we refer to the following authorities: *Rutherford vs. Greene's heirs*, 2 *Wheat.* 196. *Fremont vs. The United States*, 17 *How.*, 542. *United States vs. Fossat*, 20 *How.*, 426, 427. 3 *Bac. Abr.*, 310, "*Election*," *C. Bullock vs. Burdett*, 3 *Dyer*, 281, *a*. *Thomas vs. Turvey*, 1 *H. & G.*, 438. *Hunt & Parks vs. Gist*, 2 *H. & J.*, 498. *Clark vs. Belmear*, 1 *G. & J.*, 448. *Alnutt on Partition*, 5 *Law Lib.*, 123, 124. *Blessing vs. House's Lessee*, 3 *G. & J.*, 290. *Hammond's Lessee vs. Norris*, 2 *H. & J.* 130. 13 *Johns.*, 212. 2 *Johns.* 525.

2nd. But if any effective location of this devise could be made by the parties by matter *in pais*, it still must have been a location in conformity to the will. Now it appears from the plats and explanations in this case, that the survey made by Wilson, conformed to the terms of the will neither in quantity nor manner of location. It did not, as it professed, contain 147 acres, nor was it laid off from the north end of the testator's dwelling plantation, nor was he authorized, nor did he profess so to do. It in fact contained 132½ instead of 147 acres, and was laid off from the north-east corner instead of the north end of the plantation. How can it be said that this is a location in conformity to the will, or that any legal title did, or could pass by such an act? The defendant's first, second and third prayers are addressed to this view of the case, and should have been granted. This also is a fatal blow to the plaintiff's recovery, and if sustained will defeat her action. *Howard vs. Cromwell*, 1 *H. & J.*, 115.

3rd. Another important question is that presented by the defendant's third exception. The deed from Mrs.

Tongue, the plaintiff's lessor, to Wm. H. Hall, is, as we say, an *estoppel*, by deed, by which she is prevented from denying, that the land lying north of the line on the plats, from the green tree to the stone, as located on the plats for the fifth line of the defendant's second location, was, at the date of that deed, (16th of April 1853,) the land of William F. Stewart. This line corresponds with the line described in that deed, as commencing at "a large gum tree at the corner of William F. Stewart's land, then with the lines of said Stewart, south," &c., and the land lying north of that line is the land in dispute, and was at the time proved to be in possession of William F. Stewart, claiming the same in right of his wife, Anne Stewart, under whom the defendant claims. This we say, is an *estoppel* by deed, binding upon Mrs. Tongue. The question of *estoppel* raised in the former appeal, was that of an *estoppel in pais*, and nothing there decided, precludes us from raising this point now. It is a new question brought out for the first time under the new state of pleadings, the defence on warrant, and the plats and locations now in the case. The position is, as we insist, good law. A party is *estopped* from denying, not only the deed itself, but every fact which it recites, and all persons claiming under, or through the party *estopped*, are bound by the *estoppel*. *White.vs. Flannagain*, 1 *Md. Rep.*, 541. *Casey vs. Inloes*, 1 *Gill*, 340. *Fridge vs. The State*, 3 *Gill*, 103. *Moale vs. Buchanan*, 11 *G. & J.*, 314. *Burgess vs. Lloyd*, 7 *Md. Rep.*, 178. *Wallis vs. Dilley*, 7 *Md. Rep.*, 237. *Stowe vs. Wyse*, 7 *Conn.*, 214. *Parker vs. Smith*, 17 *Mass.*, 413. *Head vs. Hall*, 16 *Pick.*, 457. *Inskeep vs. Shields*, 4 *Harrington*, 345. *Campbell vs. Knight*, 24 *Maine*, 332. *Root vs. Crook*, 7 *Barr*, 378.

The propositions asserted in this prayer it is insisted, are good law, and it should have been granted. A survey and location made under such circumstances, is no

compliance with the terms of the will, and could confer no title to the land so laid off.

5th. The defendant's fifth and ninth prayers, assert that upon the facts therein stated, if found by the jury, they may presume an agreement between the parties by which the land in dispute should, after the death of Mrs. Stephenson, devolve upon John Harrison and his heirs, or a valid partition between the heirs at law of B. Harrison.

From the facts embodied in these prayers, a jury would be justified in presuming an agreement fixing boundaries, as between adjoining proprietors, or a partition by mutual agreement as between tenants in common, which after such long possession, cannot now be disturbed. *Boyd vs. Groves,* 4 *Wheat.,* 516. *Smith vs. Powers,* 15 *New Hampshire,* 546. *Alnutt on Partn.,* 5 *Law Lib.,* 8. *Casey's Lessee vs. Inlocs,* 1 *Gill,* 505. *Wilson vs. Ireland,* 4 *Md. Rep.,* 444. 37 *Pa. Rep.* (10 *Casey,*) 471. *Best on Presumptions,* 98, 145. 4 *Comstock,* (*N. Y.*) 262. 3 *Brevart,* (*S. C.*) 98. *Mitchell vs. Mitchell,* 1 *Md. Rep.,* 52.

The main position asserted by the sixth and eighth prayers, and from which all the conclusions therein asserted, necessarily follow, is that there being no valid location of the 147 acres in the manner directed by the will, the parties themselves made the partition referred to in Wilson's testimony, and possession was had accordingly for more than twenty years before this suit, which bars the plaintiff's right to recovery. *Mitchell vs. Mitchell,* 1 *Md. Rep.,* 52. If that position is correct, the Court was wrong in refusing these instructions.

7th. The defendant's seventh and tenth prayers address themselves to the question as to the *quantum* of recovery, in case the plaintiff should succeed. The Court will perceive, from the locations and plats in the case, that Mrs. Tongue has already possessed, sold and disposed of a portion of the 147 acres, and we say she can therefore, in

any event, recover only a moiety of the lands in dispute, after deducting from that moiety the portion of the 147 acres so sold and disposed of by her. For instance, the defendant, as representing the heirs of John Harrison, was entitled to a moiety of 147 acres, that is $73\frac{1}{2}$ acres, and Mrs. Tongue also to a moiety, of $73\frac{1}{2}$ acres. But Mrs. Tongue has already received $14\frac{1}{2}$ acres, part of the 147 acres. Consequently she is now entitled to only 59 acres, whilst the defendant is entitled to $73\frac{1}{2}$ acres of the land in dispute, containing as it does but $132\frac{1}{2}$ acres. This we say must be the measure of her recovery in this action, if she is entitled to recover anything, and accordingly our seventh and tenth prayers present this view of the case.

8th. Another question is presented by the ruling of the Court in the second exception, excluding the testimony of Charles C. Stewart, offered on the part of the defendant. This offer was made in connection with other proof to be adduced, to show that the defendant and those under whom he claims, including the witness Stewart, held the exclusive possession of said lands with the knowledge and privity of the lessor of the plaintiff. In the decision of the case in 17 *Md. Rep.*, 212, where a similar question was raised, we do not understand this Court to have decided that the evidence was not admissible, but simply that the proof there adduced, was not sufficient to make out a case of *estoppel in pais*. It was a question of the sufficiency and not of the admissibility of the evidence, and by deciding its insufficiency we understand that if made sufficient by other and stronger proofs, the defence might be made out. But by the ruling on this exception, we were not permitted even to begin to introduce such evidence. We insist, therefore, that this ruling was erroneous.

9th. We come now to consider the plaintiff's 3d, 4th, 5th and 6th prayers. They are certainly very extraordinary, both in form and substance.

The 1st and 2nd prayers were conceded by us.

Let us first notice some of the formal defects in these prayers.

The third prayer is defective because of the propositions by which it is prefaced. These propositions cannot be separated from the body of the instruction, for the prayer itself is made to depend on them. A prayer to be intelligible and not to mislead the jury, should leave it to them to find certain facts, and then plainly and explicitly instruct them as to the law of those facts.

The fourth prayer is defective in leaving it to the jury to "find that no such survey or location was made by the witness Wilson, as has been given in evidence." That is to say, they may find directly contrary to all the evidence in the cause.

Again, the fourth and fifth prayers both assert that "if the jury shall, under the Court's instructions, find," &c., and "if the Court shall be of opinion," &c. In fact, these prayers are based on the theory and presupposes that certain instructions have been or may be given by the Court to the jury, and that the Court entertains or may entertain certain opinions in regard to the validity, effect and operation of the survey made by Wilson, and as to the possibility or not of now locating the land according to the will. The Court, in fact, never did give such instructions, or entertain such opinions, as is evident from its rejection of our prayers, and yet these two prayers are made to depend upon the supposition that such instructions would be given, and that such opinions would be entertained, and the jury are told how the effect of such instructions and opinions are to be avoided, or rather how they will operate to the plaintiff's advantage. In these respects they are incorrect, informal, and calculated to mislead the jury.

Let us now consider some of the substantial defects in these prayers.

1st. The third and sixth prayers assume that the survey made by Wilson was a valid execution of the power contained in the will;—they assert that the survey and location made by him, were operative to convey a legal title to the land in dispute. This we have endeavored to show, under our first point, is not correct.

2nd. The fourth prayer asserts that if the jury make a new location of this 147 acres, by a line drawn eastwardly and westwardly across the whole plantation, then the plaintiff can recover the entirety of the 147 acres lying south of that line, and a moiety of the 147 acres lying north of that line. And it is said she can recover the first as residuary devisee, and the second as heir at law. But it is respectfully insisted, that no such recovery can be had in this action, for 1st. the plaintiff has not located the land south of the supposed line, nor does the prayer require the jury to find this line from any of the locations in the cause. There is nothing from which the jury can fix the boundaries of the land to the south of this line, or figure out the quantity of land so lying. *Adams on Eject.*, 328. 2nd. Nor can there be any such joinder of counts or demises from one lessor. A party having title as devisee to the entirety of one tract, and to an undivided interest as heir at law in another tract, cannot find one action for both and claim the one by one title and the other by another title. *Adams on Eject.*, 211, 328. *Carroll's Lessee vs. Norwood*, 5 *H. & J.*, 164. *Benson's Lessee vs. Musseter*, 7 *H. & J.*, 208. *Dorsey on Eject.*, 21, 22, 23. *Code*, page 528, secs. 50, 51. 3rd. But if the new line is to be adopted, then Mrs. Tongue can recover only an undivided moiety of the 147 acres thus laid off to the north end of the dwelling plantation by this new line. But of that she has already received 58 acres in severalty, and she would thus be entitled to only 15½ acres more, or a portion out of the land in dispute north of the new line represented by 31-175.

3rd. The fifth prayer asserts that if there was no valid location of the 147 acres, and no location thereof can be made by the jury, then the plaintiff is entitled to the whole of the land in dispute. In other words, the whole of this land is claimed for Mrs. Tongue, under a devise of the residue contained in the will of B. Harrison—claimed under a devise of the residue, which presupposes a part to have been previously given to others. It is a claim as devisee and not as heir at law. But again, Mrs. Tongue claims this land as residuary devisee; then, her title accrued in 1825, and adverse possession for more than twenty years bars her claim.

We have thus endeavored to point out some of the defects in these prayers, and are confident the judgment must be reversed, because of such defects if for no other reason.

*Thos. S. Alexander* and *Thos. G. Pratt,* for the appellee.

In support of the ruling of the Circuit Court, which is the subject of the 1st Exception, it will be insisted:

1st. That the evidence tendered was admissible to show that Eleanor Stephenson entered upon the premises in controversy as devisee of her late father, and thus to negative by anticipation the pretext that her holding was adverse to the title now set up by the plaintiff.

It was also evidence that the land so entered upon and held by her, was parcel of her father's dwelling plantation.

2nd. If admissible for the purpose before stated, the ruling of the Court was correct, and especially so as the objection of the defendant was to the admissibility of the evidence tendered for the purposes above stated; the Court simply overruled this objection.

Where evidence is tendered for several purposes, if it is admissible for any of these purposes, a general objection is to be overruled. *Carroll vs. Ridgway,* 8 *Md. Rep.,* 328. *Pegg vs. Warford,* 7 *Md. Rep.,* 606.

3rd. If the location or partition was made by or under the direction of Mrs. Stephenson, John Harrison and Thomas Tongue, considerately and with full knowledge of their respective rights, and if the partition so made was assented to and acquiesced in by Mrs. Stephenson and John Harrison during their lives, and by all claiming under them, until after the institution of this suit and at all times, by Mrs. Tongue, and those to whom she had conveyed the residue of the dwelling plantation of the deceased, it ought to conclude all parties. But this conclusion or *estoppel* was to be found by the jury from all the evidence which should be laid before them on that subject, and accordingly the counsel for the plaintiff in tendering the evidence, stated, that if it was admitted, and if it was proved that the location or partition was made as offered to be proved as aforesaid, he would then insist that the location so made was obligatory on John Harrison and his representatives. He insisted therefore, and the Court in admitting the evidence offered determined nothing more, than that such evidence would tend to prove a location or partition, which the jury might find ought to be conclusive on the parties.

The ruling of the Circuit Court, the subject of the 2nd Exception, strictly conforms to the opinion expressed by this Court on the second appeal, 17 *Md. Rep.*, 212, and indeed the case as made by the defendant was stronger than the case now presented to this Court, and the principles settled on the former hearing are conclusive at this time.

1st. Our first point in support of the ruling of the Circuit Court, to which the 3rd Exception was taken, is, that the question proposed to be discussed here, is concluded by the former judgment of this Court. *Brown vs. Somerville*, 8 *Md. Rep.*, 454.

2nd. Our second point is, that if the question was not concluded by the former decision of this Court, the deed

being *inter alios,* could not by its recitals or descriptions create an *estoppel in law* in favor of the defendant, as against the plaintiff. *Cecil vs. Negro Rose,* 17 *Md. Rep.,* 92. *Alexander vs. Walter,* 8 *Gill,* 240. *Ford vs. Gwinn,* 3 *H. & J.,* 496.

The plaintiff's 1st and 2nd prayers were conceded by the defendant. The propositions of law involved in them may therefore be assumed as postulates in the cause.

And as the plaintiff has recovered an undivided moiety of the lands in controversy, it is of no moment to inquire whether they form parcel of the land devised in trust for Mrs. Stephenson, or parcel of the residue which was devised to Mrs. Tongue. If in whole or in part, they formed parcel of the residue, the plaintiff ought to have recovered the entirety of such parcel. But this error, if it was one, operates in favor of the defendant, and cannot be taken advantage of by him.

Hence the survey made by Mr. Wilson, and the evidence connected therewith, is important only as a part of the plaintiff's case. Mrs. Stephenson, the heirs of John Harrison and those claiming under them, including the defendant, held the premises in question in privity with the title of Benjamin Harrison, and as part of the defendant's case. The sale made by or for the heirs of John Harrison to Charles C. Stewart, was with the knowledge and privity of the lessor of the plaintiff, as claimed in the defendant's second exception.

3rd. It is immaterial therefore to inquire whether or not the survey made by Wilson was strictly in conformity with the provisions in the will of Benjamin Harrison, or whether or not the survey was made under circumstances which rendered it conclusive on the parties or any of them? It will be sufficient to show that it was made for the purpose of laying off a parcel of the dwelling plantation, as, or for, or in lieu of the land devised to Mrs. Stephenson, and that the land so laid off, was accepted by

her, as, or for, or in lieu of her share of said dwelling plantation. These facts being found, the plaintiff was entitled to recover, as is claimed by the third prayer.

The plaintiff's fourth prayer states the law correctly upon its own hypothesis of facts. But it is rendered wholly immaterial by the verdict, which finds the facts supposed by the third prayer.

5th. The same may be said of the instruction given in response to the 5th prayer.

6th. The plaintiff's 6th prayer and the Court's instruction thereon, affirm that Mrs. Stephenson's possession of the land laid off for her by Wilson, was not adversary to the title of the plaintiff, and that the time which intervened between her death in 1839, and the commencement of this suit in 1855, does not bar the right of the plaintiff to recover. It is presumed that neither branch of this proposition is to be controverted.

The defendant's prayers were rejected, and properly so.

The answer to the proposition of the 1st of the defendant's prayers, is, that the plaintiff no where insisted, and was not bound to insist, that Wilson's survey was made in strict conformity with the terms of said devise. It was sufficient for any and every purpose of the suit, to show that the land laid off, was so laid off as, or for, or in lieu of the parcel devised, and that it was accepted and enjoyed by Mrs. Stephenson as such. These facts shown, negative adversary possession by her.

The defendant's location proves that the land in controversy was parcel of the dwelling plantation, and as parcel it was either devised in trust to Mrs. Stephenson for life, on which hypothesis the plaintiff is entitled to an undivided moiety thereof, as it formed parcel of the residue devised to the lessor of the plaintiff, in which event the plaintiff ought to have received the entirety. The defendant proposes therefore to show that the plaintiff ought not to recover an undivided moiety, because he is entitled to the entirety.

2nd. The same answer may be made to the defendant's second prayer.

In answer to the proposition contained in the defendant's fourth prayer, we say, that the lessor of the plaintiff does not claim under that devise. She is clearly entitled as residuary devisee of her father to all the dwelling plantation which was not devised to John in trust for Eleanor; of the land so devised in trust, she is entitled as heir at law to her father to an undivided moiety; now she concedes that the land in controversy is parcel of, not necessarily the whole of the part devised in trust, and by force of that concession she limits her recovery to an undivided moiety. If the concession was not properly made, the land in controversy is parcel of the residue, and the plaintiff ought to have recovered the whole and not a moiety thereof. The agreement or understanding assumed in the defendant's 5th prayer, would leave the parties where they would have stood under the will—as the limitation over to John Harrison would be too remote. But there is no evidence whatever of any such agreement as has been supposed. Charles C. Stewart proves nothing more than that in 1839 he purchased the land in controversy and entered into possession thereof in 1840, and that the land has ever since been held by him and those claiming under him.

The defendant offered to prove other facts by the same witness, as evidence that his purchase was made with the knowledge and privity of the lessor of the plaintiff. But the evidence tendered was excluded—and if it had been admitted for the purpose offered, it could not be used for a different purpose.

The defendant's sixth prayer concedes that the land in controversy was parcel of the land devised in trust for Mrs. Stephenson. For this claim of the lessor of the plaintiff *as heir at law* of her father, is limited to the land thus devised; and her right of entry thereon accrued

after the death of Mrs. Stephenson. The deed is given in 1839, the suit was brought in 1855, that is within sixteen years from the time of the accrual of her right of entry.

The answer to the proposition maintained by the defendant's seventh prayer, is, that the effort to apply the principle of discount and set-off to the action of ejectment, is believed to be without precedent.

The defendant's eighth prayer varies somewhat in detail from the sixth prayer, but they involve the same principle, and we pass it without further comment.

As regards the defendant's ninth prayer—it was simply impossible that the jury could find an adverse holding on the part of the defendant and those under whom he claims, dating as far back as 1825.

There is no proof that such adverse holding was open and notorious. There is no proof that the lessor of the plaintiff was aware of such adverse holding. The only proof of partition is of that made by Wilson in 1825, at the instance of all the children;—all parties claim under the will of Benjamin Harrison, and the holding of all parties from that time down to the death of Mrs. Stephenson, in 1839, was consistent with that claim, and consistent with the present claim, on the part of the lessor of the plaintiff as one of the heirs at law of Benjamin Harrison.

As to the defendant's tenth prayer: Assuming that under any state of facts a like claim would be admissible, the conclusive objection to it here is, that the defendant has no title or color of title to the lands or any part of the lands now held by the lessor of the plaintiff or her grantee Hall. He claims to have purchased the land in controversy by metes and bounds. He does not show that the heirs of John Harrison entered into any covenant to warrant the title which he purchased; and if there was any such covenant of warranty, it would be impossible to

show that on its breach the defendant could claim indemnity out of any title which those heirs may have in lands now in possession of the lessor of the plaintiff.

BARTOL, J., delivered the opinion of this Court.

This cause was before this Court on two former occasions, each time on the appeal of the lessor of the plaintiff, and will be found reported in 13 *Md. Rep.*, 416, and 17 *Md. Rep.*, 212.

When the case was remanded to the Circuit Court, after the last appeal, the defendant took defence on warrant, a warrant of resurvey was issued, and locations made by both parties and returned to the Court.

In the progress of the trial four exceptions were taken by the appellant: the first three presenting questions of evidence, and the fourth the questions raised by the prayers.

*First Exception.* The specific purposes for which the testimony of John F. Wilson was offered, were stated by the plaintiff, and if admissible for any of the purposes stated, the general objection to its admissibility was properly overruled, this point was decided in *Pegg vs. Warford*, 7 *Md. Rep.*, 606, 607, and *Carroll vs. Ridgaway*, 8 *Md. Rep.*, 335. In our opinion the evidence tendered was admissible to show that Eleanor Stephenson entered upon the premises in controversy as devisee of her father Benjamin Harrison, and thus to negative the theory that her holding was adverse to the plaintiff's title.

*Second Exception.* The question presented by this exception was decided on the former appeal, 17 *Md. Rep.*, 212. Under the principles then settled, which must govern the case in its subsequent progress, the evidence stated in this bill of exceptions, offered for the purpose of *estopping* the lessor of the plaintiff was inadmissible for that purpose, and there was no error in rejecting it.

*Third Exception.* This exception was taken to the

refusal of the Circuit Court to permit the defendant to read to the jury the deed from the plaintiff's lessor to William H. Hall, dated the 16th of April 1853, for the purpose of showing that Anne Tongue (the plaintiff's lessor) was *estopped* from denying that the parcel of land lying north of the fifth line of the plaintiff's second location, was the land of William F. Stewart at the date of the deed. This *estoppel* is supposed to arise from the description in the deed of the parcel thereby conveyed "as running to *a corner of William F. Stewart's land, then with the lines of said Stewart.*" Neither the defendant nor any one under whom he claims, was a party to the deed, and he cannot therefore claim the benefit of any recital it may contain by way of *estoppel;* whatever effect such a recital may have between the parties, they are not binding upon them in a controversy with a stranger. This point was decided in *Alexander vs. Walter*, 8 *Gill*, 240, and *Cecil vs. Negro Rose*, 17 *Md. Rep.*, 92; see also *Casey's Lessee vs. Inloes*, 1 *Gill*, 494.

*The Fourth Exception* presents for our consideration the several prayers offered by the parties and contained in this bill of exceptions. The first and second prayers of the plaintiff assert: *First*, that by the true construction of the will of Benjamin Harrison, the lessor of the plaintiff, was entitled as residuary devisee to all the lands of Benjamin Harrison, not devised to John Harrison in trust for Eleanor Stephenson; and *secondly*, that under the will of Benjamin Harrison, Eleanor Stephenson was entitled only to a life estate in the land devised to her, and that upon her death without issue, under the evidence and admissions in the cause, a moiety of the lands so devised descended to the lessor of the plaintiff as one of the heirs at law of Benjamin Harrison. These prayers were conceded by the defendant, and the propositions they contain go very far towards concluding the case. It being shown that the lands in controversy form a part of the dwelling

plantation of Benjamin Harrison, it is not material for the plaintiff to prove that the survey made by Wilson was strictly in conformity with the provisions of the will, or that under the circumstances under which it was made, it would have concluded Eleanor Stephenson in her lifetime, as a valid and binding partition under the will. If as stated in the plaintiff's third prayer the jury should find that the land so surveyed was laid off as, and for the 147 acres devised to John Harrison in trust, and that it was accepted and enjoyed by Eleanor Stephenson during her lifetime, as and for, or in lieu of her share in the dwelling plantation, and should further find that the same is correctly located on the plats,—it must follow from these facts, and under the concession of the second prayer, that the plaintiff is entitled to recover a moiety of the same; and the third prayer of the plaintiff was therefore properly granted. The verdict of the jury being in accordance with this instruction for a moiety of the lands described in the declaration, it is unnecesary to consider the fourth and fifth prayers of the plaintiff, by which the jury was instructed upon certain hypotheses, that the lessor of the plaintiff was entitled to recover the entirety of a part, or the whole land in dispute.

In our opinion there was no error in granting the sixth prayer of the plaintiff; under the facts therein stated, the possession of Mrs. Stephenson was not adversary to the title of the lessor of the plaintiff: she held under and in privity with the estate of Benjamin Harrison, under whom the lessor of the plaintiff claims, and the time which elapsed after her death in 1839, to the institution of this suit in 1855, was not sufficient to bar the right of the plaintiff to recover, even if the possession had been adversary during that time.

We shall now briefly consider the defendant's prayers.

From what has been said it follows that the defendant's first, second and fourth prayers were properly rejected; these prayers are based on the supposition that

the plaintiff's right to recover depends upon the survey of Wilson being in strict conformity with the devise in the will. This is an error: the lessor of the plaintiff does not claim under that devise. By the conceded law of the case she is entitled as residuary legatee to all the dwelling plantation not included in the devise to Mrs. Stephenson, and as heir at law, to one-half of whatever land Mrs. Stephenson took under the devise. It being established that the land in controversy is part of the dwelling plantation, and parcel of the 147 acres devised to Mrs. Stephenson for life,—it is clear she is entitled to recover one moiety of it, even though there may never have been a valid partition thereof under the provisions of the will. 3rd. And for the same reason there was no error in refusing the defendant's third prayer. 5th. There is no evidence in the cause from which the jury could presume any such agreement, as is stated in the fifth prayer, and it was therefore properly rejected 6th, 8th, 9th. The views we have expressed in deciding upon the sixth prayer of the plaintiff are a sufficient answer to the 6th, 8th and 9th prayers of the defendant. They claim to defeat the action on the ground of adversary possession in the defendant and the parties under whom he claims.

7th, 10th. These prayers, supposing the plaintiff to be entitled to recover, claim, that inasmuch as the lessor of the plaintiff or persons holding under her hold a part of the 147 acres devised in trust to Mrs. Stephenson, the defendant is entitled to have the part so held, discounted or deducted from the moiety claimed by the plaintiff in this action. No authority has been cited in support of these prayers, and we know of no precedent to warrant the application of the doctrine of offset to an action of ejectment. Being of opinion that there is no error in the rulings of the Circuit Court, the judgment will be affirmed.

*Judgment affirmed.*

(Decided November 25th 1864 )