GEORGE B. PERRY *vs.* PHINEAS F. WEEKS.
SAME *vs.* CHARLES N. PALMER.

Berkshire. Sept. 9. — Oct. 28, 1884. C. ALLEN & COLBURN, JJ., absent.

The mere execution and recording of a warranty deed of wild land, without other evidence of the grantor's title thereto, will not enable the grantee to maintain a writ of entry against a person who has been in possession of the land for more than twenty years, exercising acts of ownership under a claim of title to the land, although such acts are not such as will constitute a disseisin of the true owner.

THE FIRST CASE was a writ of entry, dated May 21, 1883, to recover a parcel of land in Adams, containing about 400 acres. Plea, *nul disseisin*. Trial in the Superior Court, before *Brigham*, C. J., who reported the case for the determination of this court, in substance as follows:

The demandant rested his case upon a warranty deed to him from Mary W. Perry and Elizabeth Wells, executed on February 10, 1883, and upon the evidence of a surveyor, which identified

the land described in the warranty deed with the land sought to be recovered.

The tenant in support of his defence relied upon the following facts only : In May, 1854, he caused the demanded premises to be surveyed by one Richmond, now deceased. After this survey, the tenant put into the ground an iron stake at the first point of departure, and stakes and stones at the several corners indicated in said survey. The iron stake remained as originally placed, a year ago. The tenant, at the time of the survey, and of the putting down of the iron stake and the stakes and stones, called two persons, and in their presence and hearing, and upon the land thus surveyed and indicated, declared that he took possession of it. Thereafterwards he took sticks of timber when he wanted them, his firewood for eight or ten years, cut timber almost every year, and cut and sold timber to one Arnold from the land so surveyed and indicated, cutting on the northwest corner, on the south end and side, and some towards the middle thereof. The tenant after the survey planted some potatoes on the land, but raised only a small quantity, fencing in the land thus planted with potatoes, to keep out cattle, by means of a fence consisting of brush cut and turned down; he also built a shanty to keep off rain when there were storms and he was at work there, split and shaved shingles there during one year, but never fenced on the lines of the land thus surveyed and indicated, and was never molested or interrupted in the doing said several acts of cutting wood and timber, &c.; until the demandant made a claim forbidding such acts on the demanded premises. The tenant planted potatoes for four or five years, twice in one place and once in another place, on a strip of land from five to eight rods long and one to two rods wide, getting a few potatoes only, and said strip of land thus planted with potatoes only was enclosed by a fence. The shanty consisted of crutches and poles covered with bark, open on three sides and running down to the ground on the fourth side, and was used as a shelter by the tenant when he was making shingles, and in storms, but he never stayed in it over night. The tenant and other persons camped on the land; but he never had a deed of the land surveyed and indicated as aforesaid, and claimed title to it by his possession and acts thereon,

and his survey of it and declaration therewith that he took possession of it, only that he supposed that this was a good way to get title to land. Between February 10, 1883, and May 21, 1883, the tenant cut no timber on the demanded premises. He never paid taxes, but he asked the assessors to assess taxes upon him, applying to the land surveyed and indicated as aforesaid; but the assessors refused to assess taxes to him upon it, saying it had never been considered worth taxing, and paying tax on land did not amount to possession. The tenant had no knowledge of the demandant's paying taxes on demanded premises until within three years.

There was no dispute at the trial as to the fact that the demanded premises consisted of wild woodland in 1854 and since, and was the same land surveyed, indicated, and taken possession of by the tenant, and upon which he did the acts of cutting, planting, and fencing, as hereinbefore described and stated.

The foregoing being all the facts which were in evidence at the trial, the judge ruled that the demandant was entitled to a verdict.

THE SECOND CASE was a writ of entry, dated January 25, 1884, to recover the same parcel of land described in the first case. Trial in the Superior Court, without a jury, before *Brigham*, C. J., who reported the case for the determination of this court. The facts, so far as they differed from those in the first case, were that the tenant put in evidence a quitclaim deed to him of one undivided half of the demanded premises, from Phineas F. Weeks, dated October 3, 1881. He also put in evidence the record of a writ of entry, brought on November 21, 1881, in the Superior Court, by Mary B. Perry, Elizabeth Wells, and Nathan B. Perry, against Phineas F. Weeks, to recover the same parcel of land, which was discontinued at June term 1883.

The demandant testified that when he took the deed of the demanded premises he knew that the action in the names of his grantors and Nathan B. Perry against Weeks for the demanded premises was then pending; that he had, before and since the date of said deed, been upon the land several times for the purpose of seeing what the tenant and others were doing, but he had never cut any timber or exercised any acts of ownership on the land; that he had paid taxes on the land some ten years,

and that they were assessed to Nathan B. Perry until about three years ago, when they were assessed to him, and have been every year since; that he had been the agent of his grantors for several years prior to their conveyance to him to care for the land in question, and had so acted.

The judge found for the demandant.

*H. W. Ely & N. H. Bixby*, for the tenants.

*T. P. Pingree & J. Dewey*, for the demandant.

DEVENS, J. The evidence offered by the tenant in the first case tended to show that all the acts of ownership that ordinarily could be exercised upon a defined but unenclosed tract of wild land had been exercised by him during a period of twenty-nine years, under a claim of title thereto by possession. In respect to these acts the case resembles *Slater* v. *Jepherson*, 6 Cush. 129, where it was held that those there proved were not such as to constitute a disseisin of the true owner. We shall not have occasion to consider whether or not the acts here shown more strongly tend to show such disseisin, as we shall assume that, as against the true owner, they were not sufficient to disseise him.

There may be a possessory title, the holder of which may be treated by the true owner as a tortfeasor, but which will avail such holder in maintaining an action of trespass or a writ of entry against a stranger for a disturbance of his own possession. Nor, in such an action, could the defendant or tenant be permitted to show that the plaintiff's or demandant's possession was not that of the true owner, as there may be possession perfectly legal and valid against one, and yet wholly insufficient as against another. *Currier* v. *Gale*, 9 Allen, 522. *Jackson* v. *Boston & Worcester Railroad*, 1 Cush. 575. *Hubbard* v. *Little*, 9 Cush. 475. *Litchfield* v. *Scituate*, 136 Mass. 39.

*Slater* v. *Rawson*, 6 Met. 439, was an action of covenant broken for a breach of a covenant of warranty contained in a deed made by the defendant to the plaintiff's assignors. The defendant contended that, although he had a certain possession, it was not such as amounted to a disseisin of the true owner, who had entered and ousted the plaintiff, and thus that the defendant was never actually seised of the land in dispute; that no title passed by the deed to his grantees; that the covenant of

warranty could not therefore run with the land and pass to the grantees. It was held that, where one entered upon woodland, cut the wood, and did other acts thereon as owner, he became seised of the land as against every one but the true ·owner, although his acts did not disseise the true owner; and that therefore, when he conveyed by deed, his possessory title would pass by the deed to his grantees, and the covenant of warranty therein would run with the land, so that he would be answerable to the grantees' assignee when the latter was ousted by the true owner.

The facts proved by the tenant showed a possession and occupation sufficient to constitute a legal seisin as against a stranger, or against any one having a mere possessory title subsequent in date to his own.

The demandant rested his case upon a warranty deed made to him on February 10, 1883, shortly before the commencement of this action, and an identification of the land there described with that here demanded. No evidence was offered tending to show that the grantors, or either of them, had any title to the premises, either by paper or possession, when this deed was made, except that which is to be inferred from the fact that it was executed and recorded. The demandant contends that the warranty deed to him, duly executed and recorded, vested a seisin of the premises in him as against any title shown by the tenant. It would certainly be an unsatisfactory rule of law, if a grantor, not shown to have any title to the land or any ability to respond upon his covenants of warranty, could by deed make a title thereto which should avail his grantee against a possession under a claim of right, which has been repeatedly held to constitute a legal seisin. *Bearce* v. *Jackson*, 4 Mass. 408. *Slater* v. *Rawson, ubi supra.*

It is indeed laid down in *Farwell* v. *Rogers,* 99 Mass. 33, as a settled rule in the law of real property, " that a warranty deed of land, duly executed and recorded, raises a presumption that the grantor had a title which he could convey, and that he has by his deed vested a seisin in the grantee." But it is not intended thereby that a grantor not shown to have any title to land may, by making a warranty deed, enable his grantee to render unavailable a possession sufficient to give title against

the rest of the world, however insufficient as against the true owner.

In *Williston* v. *Morse*, 10 Met. 17, it was contended for the plaintiff, who claimed under a recorded warranty deed from the town of Russell to him, that he was thereby invested with a title good against every one but the true owner; and that it could not be avoided by a stranger, who could set up no title but by acts of possession. It was held to have been determined otherwise in *Slater* v. *Rawson, ubi supra ;* and that, although the acts done might not be sufficient to disseise the true owner, yet the possessory title thereby acquired was valid against all persons who could not prove " an elder and better title." That case in one respect differs from the one at bar, and not favorably to the demandant's contention. It clearly there appeared that the town of Russell had an actual seisin, it having entered and made a survey of the land, claiming title before its conveyance. But it was held that, although the plaintiff might, by entry under his deed, acquire a legal seisin against all persons not having a prior title, he could have no better title than the town of Russell had; and, if the defendant had a prior possession, that the action could not be maintained.

Section 1 of the Pub. Sts. *c.* 120, providing that " a deed, executed and delivered by the person or by the attorney of the person having authority therefor, shall be sufficient, without any other act or ceremony, to convey real estate," does not enable any one to convey a title greater than that he has, but provides only a substitute for the old common law mode of conveyance by feoffment and livery of seisin. It gives legal investiture of the land conveyed, and has the same effect as if the grantor had entered upon the land and given actual possession by the delivery of turf and twig. *Ward* v. *Fuller*, 15 Pick. 185. If, " in the absence of other evidence, the deed itself raises a presumption that the grantor had sufficient seisin to enable him to convey, and also operates to vest the legal seisin in the grantee," which is the rule as stated by Mr. Justice Morton in *Ward* v. *Fuller, ubi supra*, although he there speaks of a deed which was but one in a long chain of recorded conveyances, yet the case at bar is not without other evidence, when acts of possession such as were proved are shown in testimony. These acts antedate

the presumed seisin of the demandant's grantor, which can go no further back than the time when the deed was made, unless it be connected with previous conveyances. The seisin which the grantor has asserted and the grantee received by the deed, can have no greater force than that he would have obtained by actual entry and delivery there of the deed. We have seen that this would not operate against one then having possession under a claim of title, which constitutes legal seisin. *Williston v. Morse, ubi supra.* The legal seisin acquired by such an entry is only available against those not having a prior title.

We are therefore of opinion that the learned judge who presided erred in ruling that the demandant was entitled to a verdict.

While some additional questions are presented in the second case, the considerations here discussed are decisive of that, as it is now before us.                    *New trial ordered.*