ROBERT BOYD *v.* RUDOLPH BUSCH, SR., ET AL.

[No. 24, October Term, 1929.]

*Decided November 21st, 1929.*

2

 

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*L. Paul Ewell*, for the appellant.

*L. Creston Beauchamp*, submitting on brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from a judgment for the defendant in an action of replevin instituted in the Circuit Court for Somerset County, by Robert Boyd against Rudolph Busch, Sr., Marie Busch, and John Busch, for the recovery of certain chattels described in a mortgage, duly executed, acknowledged, and recorded, from Rudolph Busch, Sr., and Marie Busch, his wife, to Boyd.

To the declaration, which is in the usual form, the defendants filed two pleas, (1) that they did not take the goods mentioned in the declaration, and (2) "that at the time of the issuing of the writ in this case the property in the tractor, with all the attachments belonging thereto, and in the incubator, mentioned in the declaration, was in Rudolph Busch, Jr., that at the time of the issuing of the writ in this case the property in the piano, Sonora talking machine, brass bed, mirror, baby basket and child's table and bench, mentioned in the declaration, was in Lillian Busch, the wife of Rudolph Busch, Jr., and that at the time of the issuing of the writ in this case the property in the American No. 1 sawing outfit, mentioned in the declaration, was in John A. Busch, one of the above named defendants." The plaintiff joined issue on the first plea and traversed the second. The defendants joined issue on the traverse, and the case was tried on issues thus made. At the conclusion of the whole case the plaintiff offered five prayers, of which the third, fourth, and fifth were granted, and the first and

second refused. That ruling is the subject of the only exception presented by the record.

Plaintiff's first prayer rests upon the proposition that the mere fact that the chattels scheduled in the sheriff's return were mentioned in the mortgage from Rudolph Busch, Sr., and Marie Busch to him created a *prima facie* presumption that the mortgagors owned the property at the time the mortgage was executed, and it instructed the jury that if they found that fact their verdict should be for the plaintiff unless they found "from the evidence a better title in said property or some part thereof mentioned in said mortgage and so replevied, in the persons, or one of them, mentioned in the defendant's second plea, and the burden of proving such better title in said property so mortgaged and replevied is upon the defendant".

That proposition as a legal abstraction was untenable, and the prayer was for that reason properly rejected.

The action was not only against the parties to the mortgage, but also against John Busch, also called John A. Busch, a stranger to it. And whatever might be said in support of the contention that the mortgagors should be estopped from impeaching a title which they in their mortgage had solemnly asserted, certainly a stranger to the mortgage could not be bound or in any way affected by an act of the mortgagors to which he was not a party, to which he had never assented, and which he had never ratified. Indeed the mere statement of the proposition that one can, by executing an instrument to which the real owner is a stranger, purporting to alien or pledge his property, thrust upon him, in any action affecting his title or right of possession, the burden of proving his ownership, demonstrates its fallacy. The only case cited in support of it, *Josslyn v. Moose River Lumber Co.*, 83 Vt. 49, is not in point. What was decided in that case, and also in *Shum v. Claghorn*, 69 Vt. 45, to which it refers, was that, where in a chattel mortgage the description of the chattel is so indefinite and vague that it could apply to a chattel not in the possession of the mortgagor as well as to one in his possession, it will be presumed in aid of the description that the

mortgagor is the owner of the chattel in his possession, which he assumes to mortgage, and that that is the chattel covered by the mortgage. But that is a different thing from holding that a mortgagor can, by including, in a mortgage to which the owner is a stranger, a chattel not in the possession of the mortgagor, so far divest the owner thereof of his title as to cast upon him the burden of proving his ownership in an action of replevin brought by the mortgagee to secure possession of it.

It is a rule of almost universal application in American courts that a stranger to a transaction, not in privity with any party thereto, can not be bound by anything which the parties to such transaction may do or say. *Jones on Evidence,* sec. 282; 35 *Ann. Cases* 1915 A 96. While the application of that rule to mortgages of personal property has not been considered by this court, the rule itself was expressly recognized in *Nutwell v. Tongue,* 22 Md. 444, and *Cecil v. Negro Rose,* 17 Md. 104. And in other jurisdictions it has been considered and applied in proceedings involving the rights of parties to such instruments. In *Gibbs v. Childs,* 143 Mass. 103, an action of replevin by a mortgagee to recover from a stranger a boat which was described in his mortgage, the court said: "The execution and delivery of a mortgage of personal property are not evidence of title to the property included in the mortgage, as against a stranger. Such acts are not necessarily acts of dominion over the property itself. If there was no possession of the property by either the mortgagor or the mortgagees, the mortgage was, with respect to the defendant, *res inter alios.* The mortgage in this case is not an ancient document. If the execution, delivery, and recording of a mortgage were held to create a *prima facie* title to personal property against a person in possession, then a *prima facie* right to the property of another could be created by any one at will. *Chaffee v. Blaisdell,* 142 Mass. 538. See *Perry v. Weeks,* 137 Mass. 584." And in *Everett v. Brown,* 64 Iowa, 420, in dealing with much the same question, it was said that "the mere fact that the mortgagor conveys the property mentioned does not au-

thorize the inference that he owns it, that it is in his possession, or, in fact, that it actually exists. Men often convey property that they do not own or possess, and it sometimes happens that instruments purport to transfer property that has no actual existence." See also *Warner v. Wilson,* 73 Iowa, 719; *Eames v. Snell,* 143 Mass. 165; *Jones on Chattel Mortgages,* sec. 116; *Wiltsie on Mortgage Foreclosures,* sec. 484. And since the action is against a stranger to the mortgage as well as against the mortgagors, and the prayer went to a general verdict, it was properly refused.

Plaintiff's second prayer asserts the proposition that, if the replevined chattels were "mentioned" in the mortgage, that the legal title thereto became vested in the mortgagee, and that, upon default in the conditions and covenants of the mortgage, the mortgagee after demand became entitled to the possession of the mortgaged chattels if "the said Rudolph Busch, Sr., and Marie Busch, were the owners of said property, or the same was in their possession and they exercised the right of ownership or control thereof to such an extent that the plaintiff had no reason for disputing the ownership of the said Rudolph Busch, Sr., and Marie Busch, or one of them in said property." Without considering the technical accuracy of the phraseology of the prayer, or the soundness of the legal principles which it submits, it was wholly inapplicable to the facts of this case. The record fails to disclose the slightest evidence to support the hypothesis that at the time of the mortgage the mortgagors or either of them possessed or owned any of the replevined chattels. In the absence of such evidence, the prayer was a mere legal abstraction far more likely to have confused and misled the jury than to have aided them in arriving at a proper verdict, and was for that reason properly refused. *Patterson v. Baltimore,* 127 Md. 240; *Fait v. Bannon,* 127 Md. 698; *Register v. Medcalf,* 71 Md. 533; *Marshall v. Haney,* 4 Md. 512.

Finding no error in the rulings involved in the only exception presented by the record, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*