(Decided 20th June, 1879.)

GEORGE M. STONEBRAKER *vs.* HENRY F. ZOLLICKOFFER, and others.

*Construction of a Will—Equitable life estate—Contingent remainder—Vested remainder—Interest of Tenant for life in Timber and Fire-wood.*

A testator devised a farm to H. F. Z., in trust, (he being also sole executor of the will,) for the use and benefit of the testator's only son G. M. S.; provided, the latter would live on said farm and

superintend its cultivation; but should he decline so to do, then the trustee should rent the farm as he might think best, and after paying all expenses, it should be optional with him whether to pay the balance of the proceeds to G. M. S., the son, or to divide it equally between the two daughters of the testator. And after bequests in trust to the two daughters of $15,000 each, the testator proceeded to devise and bequeath to H. F. Z., as executor, or to his executors, administrators or assigns, *all the rest, residue and remainder* of his *estate*, real, personal and mixed, in trust, for the uses and purposes following, that is to say, that he, she or they should divide the said residue into three equal parts or shares, and that one of said shares should be distributed to, and held by, H. F. Z., his executors, &c., in trust for the sole use of the son, G. M. S., the trustee paying to the son, the rents and profits, upon his receipt only. And after making devises and bequests of the other two parts or shares of such residue in trust for the daughters, this provision followed: "And in case of the death of my son George, or any one or both of my said daughters, *leaving children*, then in trust as to the principal of said three parts or shares of the residue of my estate, and *also in trust as to the aforementioned farm*, and aforesaid sums of $15,000, for the *child or children* of such deceased son or daughter, *share and share alike, their heirs*, executors, administrators and assigns, as tenants in common; and in case of the decease of any child or children of my deceased son or deceased daughter or daughters under age, his, her or their shares shall be divided, among his, her, or their brothers and sisters, if any there be; and in further trust, that if either of my said children should die *without leaving child or children*, then that the entire interest in my estate of the son or daughter thus dying without issue, shall become the property of my surviving child or children, and of the children of such child or children, as shall remain, their parents being dead," &c., the same to be divided *per stirpes* and not *per capita*, and all to be held in trust as before directed. G. M. S., the devisee, declined to live on the farm according to the wish of his father, but the trustee, in the exercise of his discretion, allowed the son to receive the rents and profits as sole devisee. Some months after the death of the testator, a storm of wind blew down a quantity of timber growing on the aforesaid farm, and the same was converted into cooper stuff and fire-wood, and sold by the trustee. On a bill filed by G. M. S., claiming the net proceeds of the sales made by the trustee, together with all interest which the same might have earned from the time it was received by him, or a reasonable time thereafter, it was HELD:

1st. That the complainant took but an equitable life estate in the farm devised, subject to the condition and option therein mentioned; and if there were no children in being at the time of the devise, the devise to them operated by way of contingent remainder, which became vested upon the birth of the first child, subject to open and let in after-born children.

2nd. That to the extent of the amount of the net proceeds of sale realized for fire-wood, the complainant was entitled to the corpus of the fund, but as to the amount realized for the timber, he was entitled only to the interest during his life.

APPEAL from the Circuit Court for Washington County, in Equity.

Samuel Stonebraker died in January, 1873, leaving a will, executed on the 5th of July, 1867, the provisions of which, for the purposes of this case, are sufficiently set out in the opinion of the Circuit Court. By the will, a certain farm lying in Washington County, was devised to Henry F. Zollickoffer, in trust for the use and benefit of the testator's only son, George M. Stonebraker. In August, 1873, a storm of wind blew down a large quantity of timber growing on this farm, and the same was converted into cooper stuff and fire wood, and sold by the trustee. A bill of complaint was filed by George M. Stonebraker, claiming the net proceeds of the sales made by the trustee, together with all interest which the same might have earned from the time it was received by him, or a reasonable time thereafter. The trustee and the complainant's two sisters, together with their respective husbands, were made parties defendants. The trustee and John T. Foster, the husband of one of the complainant's sisters appeared and answered; the other defendants failing to appear, an interlocutory decree was passed, and a commission was issued and testimony taken thereunder.

After hearing, Judge ALVEY delivered the following opinion:

" This is an application on the part of George M. Stonebraker, to have applied to his use the proceeds of certain wood and timber, which became prostrate by storm, on a certain farm devised in trust by his father, the late Samuel Stonebraker, deceased. To determine the question as to the right of the plaintiff, it is made necessary to ascertain by construction of the testator's will, what estate George M. Stonebraker takes under the devise of the farm.

" The will is in many respects peculiar, and is very inartificially drawn. But I think there is no great difficulty in determining what estate the devisee takes in the farm devised. The evidence of the general intent pervading the whole will, as well as the particular terms employed in the devise, all seem to point to but one conclusion, and that is, that George M. Stonebraker takes no greater estate than for life.

" The devise of the farm is to Henry F. Zollickoffer, in trust, (he being also sole executor of the will,) for the use and benefit of the testator's son, George M. Stonebraker; provided the latter will live on said farm and superintend its cultivation; but if he declines so to do, then the trustee shall rent the farm as he may think best, and after paying all expenses, it shall be optional with him whether to pay the balance of the proceeds to the son, George M., or to divide it equally between the two daughters of the testator. And after bequests in trust to the two daughters of $15,000 each, the testator proceeds to devise and bequeath to Zollickoffer, as executor, or to his executors, administrators or assigns, *all the rest, residue and remainder of his estate,* real, personal and mixed, in trust for the uses and purposes following, that is to say, that he, she or they shall divide the said residue into three equal parts or shares, and that one of said shares shall be distributed to and held by Zollickoffer, his executors, &c., in trust, for the sole use of the son, George M. Stonebraker, the trustee paying to him, the son, the rents and profits, upon his

receipt only. And after making devises and bequests of the other two parts or shares of such residue in trust for the daughters, this provision follows: 'And in case of the death of my son George, or any one or both of my said daughters, *leaving children,* then in trust as to the principal of said three parts or shares of the residue of my estate, and *also in trust as to the aforementioned farm,* and aforesaid sums of $15,000, for the *child or children* of such deceased son or daughter, *share and share alike, their heirs,* executors, administrators and assigns, *as tenants in common;* and in case of the decease of any child or children of my deceased son or deceased daughter or daughters, under age, his, her or their shares shall be divided among his, her or their brothers and sisters, if any there be; and in further trust, that if either of my said children should die *without leaving child or children,* then that the entire interest in my estate of the son or daughter thus dying without issue, shall become the property of my surviving child or children, and of the children of such child or children as shall remain, their parents being dead,' &c.; the same to be divided *per stirpes* and not *per capita,* and all to be held in trust as before directed.

"According to the statements, both in the bill of complaint and the answer of the trustee, George M. Stonebraker, the devisee, has declined to live on the farm, according to the wish of his father; but it appears that the trustee, in the exercise of his discretion, has allowed the son to receive the rents and profits as sole devisee.

"It is true, there is no express limitation of the estate in the farm to the son for life; but there is that which is equivalent to such limitation, in the terms employed to dispose of the estate both in the event of his dying leaving child or children, and of his dying without such child or children. In the former event the estate is devised to the child or children of the deceased son, to be equally shared among them, if more than one, their heirs and

Stonebraker *vs.* Zollickoffer, *et al.*

assigns; and in the latter event, that is, of his dying without children, the estate is devised to the surviving child or children of the testator, and to the children of any child that may be dead.

"The only ground upon which it can be contended that the son takes a greater estate than for life in the farm devised, is by treating the words ' child or children ' as words of limitation; but that construction is opposed both by the general rule of law and the manifest intention of the testator. The words ' child or children' are, as a general rule, and by legal presumption, taken to be words of purchase; and it is only in special and peculiar cases, where such construction is necessary to effectuate the manifest intention of the testator, that they will be taken as words of limitation, and construed to be equivalent to the words *issue or heirs of the body.* In *Wild's Case,* 6 *Co.,* 17, it was said, 'that if A devise his lands to B, *and* to his children or issue, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intent of the devisor is manifest and certain that his children or issue should take, and as *immediate* devisees they cannot take, because they are not *in rerum natura;* and by way of remainder they cannot take, for that was not his intention, for the *gift is immediate;* therefore such words shall be taken as words of limitation;' but otherwise if B had children or issue at the time of the devise. This was not the ruling upon the state of case actually before the Court, but the principle announced has been accepted as a rule in the construction of wills, in certain special cases, in order to avoid disappointing the general scheme of the will. It has, however, met with but little favor, and been reluctantly applied, and some Courts have repudiated it altogether, because it requires an artificial and strained construction, inconsistent with the plain meaning of words. *Carr vs. Estill,* 16 *B. Mon.,* 309.

"In case of *Buffar vs. Bradford,* 2 *Atk.,* 220, the testator gave, in a certain event, a share in real and personal

estate (as in this case,) to A *and her children,* and A having died in the testator's life-time, leaving a child, who was born after the will was made, *when A had no child,* it was contended, on the authority of *Wild's Case,* that the devise had lapsed; but Lord HARDWICKE was not of that opinion, and held that the child was entitled, and in the course of his opinion said: 'It must be allowed that children in their natural import are words of purchase, and not of limitation, unless it is to comply with the intention of the testator *where the words cannot take effect in any other way.*'

"It will be observed that the devise here is altogether different from that in Mrs. Hilleary's will, involved in the case of *Hilleary vs. Hilleary,* 26 *Md.,* 275. There the devise was to T. H., all the testatrix's real estate, &c., '*to him and his children forever,*' with a devise over in fee upon T. H. dying without leaving children or issue. T. H. died and never had children or issue, and the question being upon the validity of the devise over, the Court sustained the validity of that devise, and in passing said (though not necessary to the determination) that T. H. took a fee simple subject to the devise over. Here the devise is not to G. M. S., *and* his children; but being to the children upon the death of the first devisee, and therefore to succeed the life estate, with a devise over in the event of the first devisee dying without child or children, the reason for the rule, as we find it stated in *Wild's Case,* has no application whatever. If therefore, this were a devise to the first devisee, and after his death to his children, without anything more, it is clear, upon the authorities, that the first devisee would take but a life estate, with remainder to the children, who would take by way of purchase, and not by descent. And this is according to the principal rule laid down in *Wild's Case.* There the devise was to A for life, remainder to B and the heirs of his body, remainder to W and his wife, *and after their decease,* to their children, W and his wife then having issue,

a son and daughter; and it was held, that W. and his wife had but an estate for life ; and, on such a devise, although they might have had no child at the time of the devise, yet every child which they might have after, would take by way of remainder. Other and later authorities of the greatest weight are full and explicit to the same effect. *In re Sanders*, 4 *Paige*, 293; *Rogers vs. Rogers*, 3 *Wend.*, 503; *Daniel vs. Whartenby*, 17 *Wall.*, 639, 644.

"But the present case is infinitely stronger in support of the construction which gives but a life estate to the first devisee, than many to which reference could be made, where the words 'child or children,' after a devise to the parent, have been held to be words of purchase, and the first devisee took but a life estate. Here, superadded to the words 'child or children,' we have appropriate words both of limitation and distribution ; the devise being to the child or children of such deceased son, share and share alike, their heirs, executors, administrators and assigns, as *tenants in common*. What effect, if any, is to be given to these words of distribution and limitation, following the gift to the children ? In this State, it is settled that superadded words of limitation, even to the word 'issue,' which in case of a will is *prima facie* a word of limitation, will convert the word 'issue' into a word of purchase ; that word, in such case, being synonymous with children. That has been recently decided by the Court of Appeals in the cases of *Shreve vs. Shreve*, 43 *Md.*, 382, and *Timanus vs. Dugan*, 46 *Md.*, 402. See also the case of *Daniel vs. Whartenby*, 17 *Wall.*, 639, which fully supports the same proposition ; and in addition to the authorities already cited, the cases of *Curtis vs. Long-streth*, 8 *Wright*, (*Pa.*,) 297; *Perry vs. Lowber*, 13 *Wright*, (*Pa.*,) 483, and *Sisson vs. Seabuy*, 1 *Sumn.*, 242, may be referred to as full to the point, that on a devise like the present, the first devisee takes but a life estate, with remainder to his children.

" I conclude, therefore, that George M. Stonebraker takes but an equitable life estate in the farm devised, subject to the condition and option therein mentioned; and if there were no children in being at the time of the devise, the devise to them operated by way of contingent remainder, which became vested upon the birth of the first child, subject to open and let in after born children.

" Such being the right and estate of George M. Stonebraker, the plaintiff, the next question is, what interest has he in the fund produced by the sale of the timber and wood from the farm?

" Timber as such belongs to the inheritance. Tenant for life, unless he holds without impeachment of waste, (which is not the case here,) has no right to fell timber, except for necessary and proper repairs of the buildings and erections on the premises. And where timber has been blown down by wind, or severed by accidental cause, or has been cut down by a wrong-doer, it belongs to the party who has, at the time of severance, the first estate of inheritance. This was ruled in *Bowle's Case*, 11 *Co.*, 79, and the principle has been acted upon in many subsequent cases. And where timber has been so severed, the fund arising from the sale of it, the Court will order to be invested for the benefit of the estate—that is, the inheritance; and, according to the later cases, though otherwise in some of the earlier ones, the tenant for life, though he may be subject to impeachment for waste, if free from blame in respect to the particular timber severed, will be allowed to receive the interest of the fund for life. This is the settled rule in case where the timber is cut by order of Court for the benefit of the estate; and it has been decided that the reason and justice of the rule equally apply to the case where the timber has been severed by tempest, accident, or trespass, if the tenant for life be without fault. *Tooker vs. Annesley*, 5 *Sim.*, 235; *Waldo vs. Waldo*, 7 *Sim.*, 261; *Bateman vs. Hotchkin*, 31 *Beav.*,

486; *Bagot vs. Bagot*, 32 *Beav.*, 509. The tenant for life being entitled to the interest of the fund in the one case, it is difficult to perceive any good reason why he should not be entitled in the other; as in both cases he is equally deprived of the possible benefits that the trees might be to the use and enjoyment of his term, and that, too, without his fault.

"But though the tenant for life may not be entitled either to the timber or the corpus of the fund arising from its sale, yet he is entitled to the old trees which cannot be used as timber, and to the tops and branches of trees which have been felled for timber, and also to the regular thinnings and trimmings of the trees in the woods; and these he may convert into fire wood, or to any other use that he can make of them. *Herlakenden's Case*, (*3rd resol.*,) 4 *Co.*, 62; *Channon vs. Patch*, 5 *B. & Cr.*, 897. Here, while the fund in question is alleged to have arisen from the sale of timber and wood, it is not alleged, nor shown in proof, what part of the fund was produced by the sale of timber, and what part from the sale of wood. Upon the supposition that nothing was converted into fire wood, that was valuable as timber, it will be necessary that the amount realized for the wood be separately ascertained; as to that extent the complainant is entitled to the corpus of the fund; but as to the amount realized for the timber, he is entitled only to the interest thereon during his life.

"Unless this ascertainment be made by agreement, I shall refer the case to the auditor to take an account, but if an agreement can be made to obviate the reference, I will then sign a decree in conformity to the principles of this opinion, with directions that the costs be paid out of the fund arising from the sale of the timber, as was done in the case of *Tooker vs. Annesley*, 5 *Sims.*, 235."

To obviate the reference to the auditor, it was agreed by the parties through their respective counsel, that the sum

of five dollars should be taken and considered as the value of the fire wood; the Court (ALVEY, J.) thereupon adjudged that the complainant was entitled to five dollars, the value, as agreed upon, of so much of the trees as were converted into fire wood, and that the net amount of the proceeds of sale, after deducting the said sum of five dollars, should be held by the trustee, and the interest thereof paid annually to the complainant during his life-time, according to the discretion vested in such trustee by the will.

From this decree the complainant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, GRASON and MILLER, J.

*Julian I. Alexander,* for the appellant.

The Circuit Court held that the children of the testator took equitable estates for life in the property devised, with remainder to their children, vested or contingent, as they had or had not children at the date of the will.

But the will in the first instance gives the farm, together with the two sums of $15,000 each and the residue of the real and personal estate of the testator, to the son and daughters respectively, in absolute terms. The gifts are immediate, of the corpus of the fund or estate, are expressly for the use and benefit of the devisees, and are in terms which, under the Act of 1825, necessarily carry the whole interest.

The testator directs his residue to be divided into three equal parts or shares, and he then directs that the said parts or shares shall be distributed in the manner he directs: that is to say, he gives one of the three shares of his estate thus divided, to the trustee, in trust, to hold the same in and for the sole use of his son, paying the rents, issues, and profits to him and on his receipt only, and so of the other shares. The residue is blended of realty and personalty, and it surely could not be contended,

if the will had stopped there, that the gifts were not absolute to the testator's children, but were for life only. The word "life" is not mentioned in the will, and had the testator intended to give only life estates, nothing would have been simpler for him than to give estates to his children for their lives, with remainder to their children. If, then, this will had stopped there, the children of the testator would have taken their respective shares absolutely, and might have disposed of them as they saw fit.

Then follows the clause which creates the difficulty: "In case of the death of my son George, or any one or both of my said daughters, leaving children, in trust" for those children, their heirs, &c., "in case of the decease of any child or children of my deceased son or deceased daughter or daughters, *under age,* his, her, or their shares shall be divided among his, her, or their brothers or sisters, if any there be; and * * * if either of my said children should die without leaving child or children, then that the *entire interest in my estate* of the son or daughter thus dying without issue, shall become the property of my surviving child or children, and of the children of such child or children as shall remain, their parents being dead."

Now, if this clause be meant to restrain the gifts to the testator's children, it of course disables them from dealing with their shares, to the injury of their children, if any; or if none, to the injury of the survivors. And if there be no issue of any of them, the survivor will take the whole, and thus the several gifts to each will be converted into a joint tenancy.

The farm is given to George in terms that would be absolute if the will went no further. If he dies leaving children, it is to go to the children. If he dies without issue, leaving his sisters surviving him, the farm goes to them. But if he survives his sisters, and dies without issue, then he takes the farm absolutely, for there is no

gift over from him in that event. It may be remarked also, that if he dies leaving one child, who dies under twenty-one, that child takes absolutely. If he dies leaving two children, one of whom marries, has issue, and dies under twenty-one, leaving the other surviving, who also dies under twenty-one, nevertheless the latter takes the whole by survivorship. And if all his children die in his life-time, and he survives the testator's two daughters, he takes absolutely; the rule being that if the gift to children is introduced by words importing the contingency, as " in case A. B. shall leave any child or children, to his children, and if he shall die without leaving children," which is the case here, the word "leaving " has its natural sense of leaving children at the period of his death. *Bythesea vs. Bythesea*, 23 *L. J. Ch.*, 1004, is the principal authority on this point. No words and no intention are apparent on the face of the will, to cut down the estates given to the children to life estates in every event. On the contrary, it seems to be plain that they were to be entitled to the fee in certain events ; and if this is so, then the utmost construction against the children would be that the gifts were to them in fee, defeasible as to the share of each, by either dying without children in the life-time of the others or other, in which case it would go to the others or other ; but if either left children, such children would take their parent's share, defeasible if more than one, by dying under twenty-one, except as to the survivor.

The farm is, in the first place, a gift to George, and in case of his death, leaving children, to those children, their heirs, &c., as tenants in common ; but if he dies without leaving children, then over. The gift over is to take effect either in case he should die leaving children, or in case he should die not leaving children. But he must of necessity die either leaving or not leaving children, and consequently the case is the same as if the gift over had been in the case of death *simpliciter*, which is the first category

in the well-known case of *Edwards vs. Edwards*, 15 *Beav.;* 357; See *Dorsey vs. Dorsey*, 9 *Md.*, 40; *Clayton vs. Lowe*, 5 *B. & A.*, 636; *Gee vs. Mayor of Manchester*, 17 *Q. B.*, 737; *Slade vs. Milner*, 4 *Madd.*, 144; *Woodburne vs. Woodburne*, 23 *L. J. Ch.*, 326; *Rogers vs. Rogers*, 7 *Weekly Rep*, 541; *O'Mahoney vs. Burdett*, *L. R.*, 7 *H. L.*, 396; *Hammett vs. Hammett*, 43 *Md.*, 307.

These cases show that the gifts over in cases of wills like the present one are to be considered as substitutionary, and as depending on the death of some of the devisees in the testator's life-time.

But besides, the gifts here are to the " executor." The only period of " distribution" mentioned in the will is the testator's death, for he directs that the shares of his residue "so divided shall be distributed," &c., at his death. And his death is, therefore, expressly declared to be the period of distribution.

Further, he says "if either of my said children should die without leaving child or children, then that the *entire interest in my estate* of the son or daughter thus dying, &c., *shall become the property* of my surviving child or children," &c. Thus the *property* taken by the survivors is the *interest* of the child dying, in the testator's estate, and the gift over is equipollent with the first gift to the children. But the gift over is conceded to be of the absolute estate. Therefore, the first gift must be absolute, and what is there in the will to cut down the natural force of the words "entire interest in my estate," used by the testator?

The words are not "part" or "share" or the like, but "interest," which "*ex vi termini*," says Lord COKE, *Co. Litt.*, 345 *b*, "in legal understanding extendeth to estates, rights, and titles that a man hath of, in, to, or out of lands; for he is truly said to have an interest in them, and by the grant of *totum interresse suum* in such lands, as well reversions as possessions in fee simple, shall passe,

And all these words singularly spoken are *nomina collectiva;* for by the grant of *totum suum statum* in lands, all his estates therein shall passe."

The survivors here are to take the entire interest in his estate of the child dying ; on the supposition that that child is to take for life only, the survivors are therefore to take for the life of their deceased brother or sister, which is absurd. Moreover, from the residuary share of each are to be deducted whatever book accounts or notes he may have against each at his death, which shows two things : first, that the *interest* of each was to be ascertained at his death ; and next, that they were to pay their debts to him out of an absolute sum or property given to them.

*Hy. Kyd Douglas,* for the appellees.

The estate devised to Dr. Zollickoffer is an active executory trust, vesting the legal estate in him, and in cases of this kind the rule in *Shelley's Case* has no application. *Ware vs. Richardson,* 3 *Md.,* 505.

And at any rate, if hereafter the legal estate should vest in the children or heirs of the appellant, there is now but an equitable estate in him, and the two estates cannot coalesce. *Shreve vs. Shreve,* 43, *Md.,* 394.

Is there anything in the language of the will which will permit us by construction to enlarge the estate of the appellant, beyond an estate for life, by implication? Estates are only enlarged by implication in cases where the testator has left it uncertain what estate he intended to give ; and as said in *Shreve vs. Shreve*—"where there is an estate for life given in express terms to one party, with a limitation of the fee to others, there is no room for the doctrine."

If this were a devise directly to the appellant, and after his death to his issue, if he leave any, and if not, to his sisters, even then the word "issue" would be construed to *mean children,* and there being other words of limi-

tation superadded, the word *issue* would be held to be a word of purchase, (that is, the stock as fixed by the will itself, from which the subsequent inheritance should proceed,) and the estate of the appellant, the first taker, would be only for life. But here the word "children" is used in the will, and in case of the death of the appellant, the property is to go to his "child or children," if any, "share and share alike, their heirs, &c., as *tenants in common*,"—superadded words of limitation fixing the stock of inheritance in the grandchildren as purchasers, and very similar to the case of *Findlay vs. Riddle*, 3 *Binney*, 156, and the case put in *Horne vs. Lyle*, 4 *H. & J.*, 435.

The main question presented by this case has been recently decided by this Court and also by the Supreme Court of the United States. *Shreve vs. Shreve*, 43 *Md.*, 383; *Timanus vs. Dugan*, 46 *Md.*, 402; *Daniel vs. Whartenby*, 17 *Wal.*, 639.

The timber while standing is of course part of the estate; when cut or blown down, it is part of the inheritance. If the life tenant is entitled to any portion of it, when sold and invested, it is only the interest of the sum invested. *Waldo vs. Waldo*, 7 *Sim.*, 261.

It is contended by the appellant that the phrase in Stonebraker's will, viz., "*In case of the death of my son George or any or both of my said daughters*"—must be construed by the Court to mean the death of George in the life-time of the testator; and that as George survived the testator, George takes the farm and the other legacies *in fee*, and not a life estate therein.

But it is submitted that it has been determined in many cases, that the Courts will only adopt such a construction either where it is in accordance with the testator's intention, or where the will is so incongruous and ambiguous as not to be capable of any other construction. In this case the intention of the testator is apparent all through

the will, and the construction contended for by the appellant would only violate that intention. *Dorsey vs. Dorsey*, 9 *Md.*, 40; *Hill vs. Hill*, 5 *G. & J.*, 87; *Hammett vs. Hammett*, 43 *Md.*, 307; *Horne vs. Pillans*, 2 *M. & K.*, 15; 2 *Jarman on Wills*, 661, et seq.; 1 *Roper on Legacies*, 613, et seq.; *Douglas vs. Chalmers*, 2 *Ves.*, 500.

If the Court should be of opinion as contended for by the appellee, that the language of the will gives George a life estate, then there is no room for the position taken by the appellant. 2 *Jarman on Wills*, 666; 1 *Roper on Legacies*, 613; *Rogers vs. Rogers*, 7 *Weekly Reporter*, 541; *De Costa vs. Keir*, 3 *Russ.*, 360. When as in this case, this legatee is only to get the rents, profits or interest, the appellant's rule of construction cannot apply. 2 *Jarman on Wills*, 666; *Tilson vs. Jones*, 1 *Russ. & M.*, 553.

BARTOL, C. J., delivered the opinion of the Court.

The question in this case arises upon the construction of the will of Samuel Stonebraker. The appellant, son of the testator, claims the proceeds arising from the sale of certain timber, which had been prostrated by a storm on a farm devised by the will.

It is conceded in the argument that the right of the appellant depends entirely upon the question, whether his interest and estate under the will is in fee or for life only.

Our brother ALVEY sitting in the Circuit Court, decided that the appellant took under the will an equitable estate in the farm, for his life only; and we entirely concur in this conclusion.

The decision of the case may very well be rested upon the reasoning contained in the opinion of Judge ALVEY and the authorities therein cited.

The will does not in express terms limit the estate devised to the appellant, to his life only, and hence it is argued that under the Code, *Art.* 93, *sec.* 305, (Act of 1825, ch. 119,) he takes the absolute estate in fee.

There being no words of perpetuity, the devisee would at the common law, take a life estate.

The Code provides that a devise without words of perpetuity or limitation shall operate to pass the entire and absolute estate, "unless *it* shall appear by devise over or by words of limitation or otherwise, that the testator intended to devise a less estate and interest."

In the will under consideration, we think the intent to limit the estate of the appellant to his life, clearly appears from the terms employed; whereby the estate is disposed of after the death of the appellant, both in the event of his dying leaving a child or children, and of his dying without leaving child or children. In the former contingency the gift is to the child or children of the appellant, "to be equally shared among them if more than one, their heirs and assigns; and in the latter event, that is of his dying without children, the estate is devised to the surviving child or children of the testator, and to the children of any child who may be dead."

The position that the devise over to the *children* of the first devisee enlarges his estate by the operation of the "Rule in *Shelly's Case*" is altogether untenable, because it is well settled that the word children is not to be construed as a word of limitation, unless such clearly appears to be the intent of the testator, and in this will no such intent appears. We need refer on this point to no other authorities except those cited in the opinion of the learned Judge by whom this case was decided below. From these authorities it is clear that the "Rule in *Shelly's Case*" has no application to the will before us. And we do not understand the appellant's solicitor as so contending.

The ground upon which they seek to maintain that the appellant takes the absolute estate in the farm devised, is that the limitation over in the event of his death is to be construed as referring only to the contingency of his death happening during the life-time of the testator, and

many authorities have been cited by them to show that if the will be so construed, then the devise to the children becomes a substitutionary devise, and the first devisee, if he survives the testator takes an absolute estate.

We have examined the cases cited in argument, and are of opinion that they do not support the construction of this will, for which the appellant contends. It appears to us to be quite plain from the terms of the will, that the contingency upon which the limitation over is to take effect, refers not to the death of the first devisee during the life of the testator, but to his death whenever it may occur at a subsequent time. The contingency is not simply the death of the devisee, but his leaving children or not leaving children at the time of his death. The effect of this construction is to limit the estate of the first devisee to the term of his life.

We refer to the decision of Sir J. LEACH, V. C., in *Allen vs. Farthing*, stated in 2 *Madd.*, 310, and more fully reported in 2 *Jarman*, 168 *m.* That case is very analogous to this. The will there under consideration was, in its provisions, almost identical with the will before us, and the decision of the Vice-Chancellor appears to us to be consistent with reason and authority, and quite conclusive of the present case.

We refer also to *Child vs. Giblett*, 3 *Mylne & Keen*, 71, which was a decision to the same effect by the same learned Judge while Master of the Rolls.

Many other cases might be cited in support of this construction of the will, but we think it is plain from the words of the will itself.

It follows that in our opinion, the decree of the Circuit Court ought to be affirmed.

Upon the question as to the right to the timber, we have said that it has been conceded on the part of the appellant, that if his estate under the will, is a life estate only, he is not entitled thereto.

This branch of the case is rested upon the opinion of the Judge sitting in the Circuit Court, and need not be further discussed.

*Affirmed and remanded.*

(Decided 20th June, 1879.)