## No. 10,011.

### EDWARD MORGAN vs. TONY NAGODISH ET ALS.

An action brought under the provisions of a special statute is not necessarily petitory or possessory. It may be *sui generis*.

A suit brought under Act 106 of 1886—it being an act to encourage, protect, regulate and . develop the oyster industry in this State—is necessarily predicated on apparent title and possession as owner of the lands, acquired from the State or United States government *prior* to the passage of the act, by the claimant of the *exclusive* right to use the bayous, lakes, etc., which make into or run through them, for the purpose of *planting* oysters and other shell fish. The terms of said act do not include them within its designation of common property.

If the salt water ascertained to be in a bayou, lake, cove, or inlet adjacent to, or connected with, an arm of the Gulf of Mexico, does not result from an overflow that is occasioned by high tides flooding its banks; but, in the first instance, enters an arm of the gulf, and thence passes into said bayou, lake, etc., and is there combined with fresh water derived from other sources, same cannot be considered as an arm of the sea, nor its banks the seashore.

All that tract of land over which the greatest water-flood extends *itself* is the seashore.

" High seas" mean that portion of the sea which washes the *open coast*, and do not include the combined salt and fresh waters which, at high tide, flood the banks of an adjacent bay, bayou or lake.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

### *F. C. Zacharie* for Plaintiff and Appellee:

The action here corresponds more nearly to the " petitory " than the "possessory," as it is based on ownership. It closely resembles the action of trespass of the Common Law, or *quare clausum fregit*.—See Burrell and Bouvier's dictionaries ; verb. " trespass" and " quare clausum fregit," in which action ownership must be alleged and proved.

The Articles of the Civil Code, on the Seashore, which are identical with the Roman Law, are to be interpreted by the same rules as those of the Code Napoleon. Merlin, tom. 14; verb. Rivages de la Mer, p. 115.

Section 2, Act 106 of Louisiana, 1886, gives to the riparian proprietor of banks of streams "the exclusive right to use said body or bodies of water, for planting oysters and other shell fish," and such owner and proprietor has the right to enjoin others from using it, by allowing them two years to remove any oyster beds already planted. Sec. 5, Act 106, 1886.

The right, accorded by special statute, is only a confirmation of that established already

Morgan vs. Nagodish et als.

by the Civil Law, and even if it did not already exist, the State, as a sovereign, has the right to control, regulate, lease, give or grant exclusive use of the oyster fisheries in its navigable waters, to its subjects or citizens, even where such fisheries are natural reefs. 16 Peters, 370, 257, 258, 266; 1 Howard, 103; 3 Howard, 220; 7 Howard, 556; 9 Howard, 636; 15 Howard, 432, 433; 18 Howard, 74, 75; 3 Wall., 726: 6 Wall 436; 4 Otto, 338, 394; 15 Otto, 491.

### *E. Howard McCaleb* for Defendants and Appellants:

1.  A plaintiff cannot maintain an injunction suit forbidding defendants "from landing, going on, camping, planting or bedding oysters on the water front of land, or otherwise trespassing in any manner whatsoever upon" land claimed by him. Such an action is a nondescript, neither petitory (C. P. Arts. 43, et seq,) nor possessory in character—C. P. Art. 49. "Trespass does not lie for taking shell fish between high and low water mark." Peck vs. Lockwood, 5 Day, 22.
2.  The State cannot confer title upon an individual to the seashore, because it is common property, not susceptible of private ownership. Rev. C. C. 450, 451, 452, 453; 12 L. 324; Institutes of Justinian, Lib. II, Tit. 1, §§ 1, 3, 5; Celsus Lib. XV, Dig.; Dig. Lib. 1 Tit. XVI; L. 96; Jovolenus Lib. II ex Cassio; Morean's and Charleton's Partidas, Vol. p. 535 L. 3 and p. 336 L. 4 and 6.
3.  The articles of our Code are taken from the Roman law, which differs from the French law, relating to the sea and its shores. Note to Art. 1, Sec. 1, No. 115 of Tit. III Domat's Civil Law by Strahan, Cushing's Ed. The Roman law was framed with reference to the Mediterranean Sea, while the French Ordinances concerning the seashore had in view the Atlantic Ocean. Merlin Ques. de Droit; Rivegas de la Mer.

---

The opinion of the Court was delivered by

WATKINS, J. The plaintiff claims to be the owner of a tract of eight hundred acres of land by a regular chain of title from the State, with all the rights, privileges and servitudes appertaining thereto, and alleges himself to be in possession thereof. He avers that this property is subject to *tidal overflow*, as shown by the official plan of survey in the State land office; and that patents were issued therefor on the 13th of February, 1878.

He further avers that the several defendants, composing a small colony of Austrian fishermen, are now and have been in the habit of trespassing upon said lands, camping thereon, *bedding and planting oysters*, and committing other and divers acts of trespass, without color of right, or warrant of law, and in disregard of his rights as owner, and against his protest, and from which he has suffered damages to the extent of $250.

He prayed for and obtained an injunction against them, restraining and prohibiting them from landing or camping on same, and from *planting and bedding oysters* on the water front thereof, and from otherwise trespassing thereon; and he prays judgment perpetuating his injunction.

The defense, as set out in defendant's answer, is fourfold:

1. That plaintiff is without right to maintain this action and stand in judgment.

2. A general denial.

3. A special denial of his ownership and possession.

4. An averment that they are, and have been for several years, engaged in fishing and *bedding* oysters, at a place known as Bayou Cook, an arm of the Gulf of Mexico, and a part of the seashore, on which they have built cabins for shelter, and have been accustomed to moor their boats and the like; and, that said seashore is common property, not susceptible of private ownership.

I.

On the trial the defendants objected to the introduction of proof of the plaintiffs' title, on the ground that this is a possessory action.

We do not so regard it. It is an action that is *sui generis*, and brought under the provisions of Act 106 of 1886, it being an act to " encourage, protect, regulate and develop the oyster industry in this State," etc.

Section one of that act provides that all " the *beds* of rivers, bayous, creeks, lakes, coves, inlets and seashores bordering on the Gulf of Mexico, and all that part of the Gulf of Mexico within the jurisdiction of this State and not heretofore sold  *  *  *  shall continue and remain the property of the State of Louisiana, and may be used as a common by all the people of the State, for the purposes of fishing and taking and catching oysters and other shell fish, subject to the restrictions hereinafter imposed; and no grant, or sale, or conveyance shall hereafter be made by the register of the State land office to any estate, or interest of the State in any *natural* oyster bed, or shoal, whether said bed or shoal shall ebb bare or not."

The provisions of section two are " that if any river, bay, lake, bayou, cove, inlet or pass makes into or runs through the land of any person, and is comprised within the limits of his lawful survey, such person, or other lawful occupant, shall have the *exclusive* right to use said body or bodies of water for planting oysters and other shell fish; but the right of the owners, or occupants of land, on any *other* shores, bays, rivers or bayous within the jurisdiction of the State, shall extend to ordinary low water mark; but it is not intended thereby to deprive them of the privilege extended to *others* by the first section of this act."

From a perusal of the quoted provisions of the statute it is clear that the evidence objected to was competent. This testimony was necessary in order that we may determine whether the lands had been

sold by the State prior to the passage of the law ; whether the *beds* o rivers, bayous, creeks, lakes, coves, inlets and shores thereon may be " used as a common " by the defendants for the purpose of fishing and *taking and catching* oysters and other shell fish; or, being situated within the limits of plaintiff's property acquired from the State prior to the passage of said law, he is entitled to the *exclusive* right to use said bodies of water thereon " for *planting* oysters and other shell fish."

The judge *a quo* did not err in admitting the testimony.

## II.

Defendant's counsel also urged objections in the court below to the introduction of a certificate executed by James L. Lobdell, register of the State land office, which purports to verify as correct the annexed sketch of the lands in controversy, and as " taken from approved maps on file in his office," on the ground that he is incompetent to grant the same.

He further objected to the introduction of a certified copy of a survey made by Rightor and McCullom, surveyors, in 1840, and also of a list of swamp and overflowed lands approved to the State by the United States, accompanied by the certificate of approval of the surveyor general of the State, showing those in question to have been " swamp lands," on the grounds following, viz :

1. That said survey was not made in conformity to act of Congress, approved March 2, 1849.

2. That said surveyors were not authorized to make the said selections.

3. That the certificates are informal and incomplete and inadmissible, and do not establish any fact at issue in this case, and same are not worthy of credence, and not the best evidence.

He further objected to the introduction in evidence of a certified *extract* and plan from the office of the United States surveyor general, on the ground that the register is unauthorized to grant any such certificate—the record or a certified copy thereof being the best evidence.

These several objections having been overruled and the documents admitted, the defendants' counsel reserved bills of exception.

Under the express terms of R. S. Sec. 2930, we are of the opinion that the register was competent to grant said certificate.

The objections made to the certified copy of the survey of swamp lands, and the certificate of approval by the surveyor general, appear

to us to be technical, and whatever force same may have, go to their *effect* only.

The objection to the certified *extract* from the surveyor general's office is covered by a familiar rule of practice. There was no necessity for the introduction of the *entire* record, or of a copy of it.

If this were a petitory action, such objections would be of greater force. But, for the purpose of this action, the plaintiff is only required to show an *apparently* valid alienation of this property by the State; and, for this purpose, the objected evidence was properly received and was competent.

### III.

The evidence shows that the lands, of which the plaintiff claims ownership and possession, was sold by the State anterior to the enactment of Act 106 of 1886. Hence the beds of the bayous, creeks, lakes, coves and seashores bordering on the Gulf of Mexico, and embraced within the calls of plaintiff's authentic title, may not be used as a common by the defendants, for the purpose of fishing, and taking and catching oysters and other shell fish; but the plaintiff, on the contrary, has the *exclusive* right to use the bays, lakes, bayous, coves, inlets or passes which make into or run through his land, or may be comprised within the limits of his lawful survey for the purpose of *planting* oysters and other shell fish.

The notarial act of sale under which he holds, imports the delivery of possession.

### IV.

The remaining question to be considered is whether or not the bayou, creek, cove or lake, denominated Bayou Cook, is an arm of the Gulf of Mexico and a part of the seashore, and, as such, common property, and not susceptible of private ownership.

From the evidence it appears that the property plaintiff acquired from the State, by and through several *mesne* conveyances, is penetrated, and, in part, covered by an inlet or bayou called "Bayou Cook," a "place celebrated for the superior quality of its oysters." On the banks of this bayou, or inlet, the defendants have built cabins on posts driven in the ground, and beded oysters in the shallow waters near the shore.

Bayou Cook appears to form a connecting link between Bay Bastian, an arm of the Gulf of Mexico, and Bay Adam. The latter is situated a mile or more from Bay Bastian, in the interior, and in close proximity to the Mississippi river, a few miles above the point of its confluence with the gulf. Bayou Cook is of about one mile in length,

two acres in width and twenty feet in depth in the main channel. Some water passes into it from the Mississippi river, through small bayous and an adjacent swamp; and some salt water comes into it, by way of Bay Bastian, from the gulf. This commixture of fresh and salt water is decidedly brackish.

For the most part, the defendants live on the shores of Bayou Cook, and in it they fish, and bed and gather oysters. It is not contended by their counsel that theirs are *natural* oyster beds, but those *they have planted*.

The proof does not show clearly the extent to which the ebb and flow of the tides of the gulf effect these lands on the shores of Bayou Cook, or whether or not the oyster beds of the defendants are, at any time, bared by the ebb tide.

Evidently the salt water found in Bayou Cook does not result from the overflow occasioned by the high tides flooding its banks; it enters Bay Bastian, in the first instance, and thence passes into Bayou Cook. The salt water thus supplied, combined with the accumulation of fresh water derived from the Mississippi river, floods the banks of Bayou Cook and passes into the adjacent marsh, to be returned again to the gulf, when its tide is low.

There is a disagreement between counsel as to the closer applicability of the French or Roman law to this controversy. Defendant's counsel insist that, as the articles of our Civil Code are taken direct from the Roman, the French law and jurisprudence are without application. That, as the compilers of and the commentators on the Roman law and jurisprudence had in view the Mediterranean Sea, while those on the French law and jurisprudence had in view the Atlantic Ocean, the former should prevail in case of a textual difference—the Gulf of Mexico being the American Mediterranean.

Justinian declares that " things common to mankind by the law of nature are the air, running water, the sea, and consequently the shores of the sea."   Lib. II, Tit. 1, par. 1.

" All that tract of land over which the greatest *water flood* extends itself is the seashore."   *Ibid*, par. 3.

" The use of the seashore, as well as of the sea, is also public by the law of nations; and, therefore, any person may *erect a cottage* upon it, to which he may resort to dry his nets and haul them from the water; for the *shores* are not understood to be *property* in any man, but are compared to the sea itself, and to the sand or ground which is under the sea."   *Ibid*, par. 5.

Domat defines "things common to all " to be "the heaven, the stars, the light, the air, the sea." 1 Domat, Sec. 1, Art. 1, par. 115.

We find in the text no mention of the seashore. Our own Code says, " things which are common are air, running water, the sea and its shores." R. C. C. 450.

It also says the " seashore is that *space of land over which the waters of the sea spread,* in the highest water, during the winter season." R. C. C. 451.

" From the public use of the seashores it follows that every one has a right to build cabins thereon for shelter, and likewise to land there, either to fish or shelter himself from the storm, to moor boats, to dry nets," etc. R. C. C. 452.

The compilers of the Code closely followed the precepts of Justinian.

" *Litus est, quos que maximus fluctus a mari pervenit.*" Celsus, Lib. Dig. 25.

Morean's and Carlton's Partidas, Vol. 1, p. 335 ; L. 3, p. 336 ; Law 4 and 6.

In quite an early case the Supreme Court said : " It has frequently been adjudicated in the English common law courts, since the restraining statutes of Richard II. and Henry IV. were passed, that high seas mean that portion of the sea which washes the *open coast.*" 5 Howard, 453, Warring vs. Clarke.

Whether we take the criterion established by our Code or that by Justinian, and apply to either the evidence in this case, we must conclude that Bayou Cook is not an arm of the Gulf of Mexico, and that its banks form no part of the seashore. The salt water ascertained to be in Bayou Cook is not supplied by a " water flood " from the gulf ; nor do " the waters of the sea (gulf) spread, in the highest water, during the winter season," *over its banks.*

Quite a different rule applies to the banks of *navigable* rivers and water courses.

" By the laws of nations the *use* of the banks is as public as the rivers ; therefore, all persons are at equal liberty to land their vessels, unload them, and to fasten ropes to trees upon the banks as to navigate upon the river itself ; still the banks of the river are the property of those who possess the land adjoining," etc. Justinian, Lib. 2, Tit. 1, par. 4 ; 1 Domat, Sec. 1, Art. 1, par. 116 ; R. C. C. 445.

The statute, under the provisions of which this suit is brought, has taken this distinction into consideration. It is restricted, in terms, to that part of the environs of the Gulf of Mexico " within the jurisdic-

tion of the State" and then particularizes the rivers, bays, lakes, bayous, coves, inlets and passes which "make into or run through the land of any person," etc.

It fully recognizes the right of all persons to *use in common*, for the purposes of fishing and catching oysters and other shell fish, in any "*natural* oyster bed or shoal," the *beds* of rivers, bayous, creeks, lakes, coves and seashores.

This is in exact conformity with the precepts of Justinian. Quoting: " Wild beasts, birds, fish, and all animals bred either in the sea, the air, or upon the earth, so soon as they are taken become, by the law of nations, the property of the captor; for natural reason gives to the first occupant that which has no previous owner." Justinian, Lib. 11, Tit. 1, par. 12.

The statute quoted accords to the owner of the land which any river, bay, lake, bayou, cove, inlet or pass "makes into or runs through, * * * the exclusive right to use said body or bodies of water for planting oysters and other shell fish."

This land seems to have been recognized as a part of the public domain, and as such the State sold it to the plaintiffs' vendors. The Legislature has, by very strong implication, recognized the right of property therein as vested in private individuals. The district judge was of the opinion that Bayou Cook was not an arm of the Gulf of Mexico, and that its banks formed no part of the seashore—hence the land in question was not common property, but was susceptible of private ownership, and we are of the same opinion.

As there is no complaint made by appellee of the lower judge's reservation in favor of the defendants, his—

Judgment is affirmed.

Mr. Justice Todd absent.