# THE POTOMAC DREDGING COMPANY *vs.* LEWIS E. SMOOT, ET AL.

*Life Tenant of Land not Authorized to Take Away Sand and Gravel— Construction of Lease Authorizing Removal of Sand from Water Front—Ratification by Remaindermen of Unauthorized Lease by Life Tenant—Estoppel.*

A lease granted "certain riparian or other rights to wit: The exclusive privilege of taking, by dredging or otherwise, all sand and gravel that the lessee may desire to take along the entire shores or water fronts" of a described farm, binding on a creek near where it empties into the Potomac river. *Held*, that the shores or water front th us described is limited to the space between high and low water marks, and refers to the condition of the property at the time of the execution of the lease. The lessee is not entitled to take sand and gravel from the bank as it constantly receded, as a result of the dredging, and thus take away the mainland.

The life tenant of a tract of land bounding on a water course is not authorized to commit waste by dredging and carrying away gravel from the shore, and cannot authorize anyone else to do so.

The life tenant of a farm binding on navigable water, executed a lease authorizing the lessee to take away the sand and gravel from the shore. This constituted waste, and the life tenant had no power to grant the right. Subsequently the life tenant and the remaindermen united in a conveyance of the farm to a third party, which set forth that it was made subject to the provisions of said lease. *Held*, that this reference did not constitute a ratification by the remaindermen of the lease, but was merely intended to show that the transfer by the life tenant of his life interest was subject to his prior lease.

*Held*, further, that this reference to the lease does not operate to estop the remaindermen from denying the right of the lessee to take away the sand and gravel, since in accepting the lease, the lessee was not influenced by the deed, which was made afterwards.

The word "shore," as used in conveyancing, when applied to tidal waters, describes the space between high and low water marks.

The common law rule that the owner of riparian land cannot grant the right to take sand from the shore below high water mark has been changed as to certain parts of the State by the Acts of 1900, chap. 577, and 1906, chap. 426.

*Decided April 1st, 1908.*

Cross appeals from the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*M. H. Magruder* and *Enoch Harlan*, for the Potomac Dredging Co.

*L. Allison Wilmer*, for Lewis E. Smoot *et al.*

SCHMUCKER, J., delivered the opinion of the Court.

On November 25th, 1903, Charles B. Boswell granted to Angus Cameron and his assigns the privilege of taking sand and gravel from the shore or water front of a farm called "Moxley's Delight" on the Piscataway creek at or near its junction with the Potomac river, in Prince George's County. The privilege was granted for the term of five years at the rent of fifty dollars per year with the right in Cameron to a renewal of the term for another five years. The privilege granted was described in the conveyance as "The exclusive privilege of taking by dredging or otherwise all sand and gravel that he, his personal representatives or assigns may desire to take along the entire shores or water fronts of the farm owned by the party of the first part known as Moxley's Delight."

Cameron was at that time the president of the Potomac Dredging Company of Baltimore City and he assigned to the company the privilege of taking sand and gravel which he had procured from Boswell. The company, having made the farm shore more accessible by dredging a channel to it at a cost of about $5,000, proceeded to exercise the privilege of taking sand and gravel therefrom.

After the company had removed almost all of the sand and gravel from the water front of the farm between high and low water mark, Boswell, jointly, with his wife and children, on June 4th, 1906, conveyed the farm in fee, for a price of $1,000, to A. F. Harlan who subsequently conveyed it to Lewis E

Smoot. The deed from the Boswells to Harlan as well as the one from Harlan to Smoot contained a provision stating that the conveyance was made "subject also to the provisions of a lease to Angus Cameron of November 25th, 1903," and referred for further identification of the lease to the place at which it was recorded on the public records.

Smoot having acquired title to the farm began to take sand and gravel from it approaching it from the water and excavating into the fast land. The Potomac Dredging Company warned Smoot to desist from further dredging operations but he paid no heed to the warning, whereupon the company on December 4th, 1906, filed a bill against Smoot and his employees on the equity side of the Circuit Court for Prince George's County for an injunction to restrain them from taking sand or gravel from the shore of the farm. The bill alleged the facts which we have mentioned and further that the dredging operations of Smoot greatly interfered with the exercise by the plaintiff company of the privilege of taking sand and gravel from the shore of the farm secured to it by the lease of November 25th, 1903, from Boswell.

The bill then prays for an injunction to restrain Smoot and his employees "from taking by dredging or otherwise any sand or gravel from the said shore of said farm" or from interfering with the plaintiff's taking it, and for an account of the sand and gravel already taken.

Smoot answered the bill admitting the taking of sand and gravel by him from the farm and claiming the right to do so as owner of the land. He further denied all right and title of the Potomac Dredging Company to take any sand or gravel from the farm alleging in that connection that the farm had been the property of a deceased wife of Charles B. Boswell, the lessor in the lease of November 25th, 1903, under which the plaintiff company claimed, and that at the time of making the lease he was but a tenant by curtesy of the land and was without power, by any form of grant or lease, to authorize the company to commit waste upon the farm by dredging away its soil, The answer further insisted that even if the

company had ever validly acquired in any manner the right to take sand and gravel from the shore of the farm it had, under its grant, no right to take such material from the fast land of the farm, and that it had already taken away the entire shore of the farm and was then unlawfully engaged in taking away the fast land to such an extent as to have caused large trees there located to fall down. He declared his inability to give an exact account of the sand and gravel taken from the shore of the farm by him but stated the approximate amount of it.

After much testimony had been taken and the case heard the Court granted an order for an injunction restraining Smoot and his employees from taking sand or gravel by dredge or otherwise from the entire shores of the farm known as Moxley's Delight or interfering with the plaintiff company in taking it during the term of its lease. The order provided that "the term shore as used in this order is limited and confined to high water mark as it existed at the date of the deed from Harlan to Smoot" and the injunction when issued contained a similar provision. From that order both parties appealed, the plaintiff appealing from the portion of it limiting the operation of the injunction to the land below the high water mark, and the defendant from the entire order.

Copies of the lease and deeds which we have mentioned were filed as exhibits and appear in the record. The ownership of the farm by Fannie R. Boswell, the former wife of Charles B. Boswell, and her death intestate about eighteen years ago leaving a number of children are proven, so that there is practically no controversy as to the material facts of the case. The fundamental issue presented by the record is that of the nature and extent of the privilege of taking sand and gravel granted to Angus Cameron, under whom the plaintiff company claims, by the lease from Charles B. Boswell of November 30th, 1903, as it is upon the title derived through that conveyance that the company's application for relief is founded.

The first inquiry which presents itself for solution is from what portion of the farm did the lease, under which the com-

,pany claims, intend to grant the privilege of taking sand and gravel? The privileges granted by the lease are therein described as "certain riparian or other rights, towit, the exclusive privilege of taking by dredging or otherwise all sand and gravel that he (the lessee) his personal representatives or assigns may desire to take along the entire shores or water fronts of the farm." The size and shape of the farm appear from the following diagram:

The plaintiff company, upon its brief, contends that "shores" and "water fronts" mean those actually in existence at any time during the term created by the lease, and also include the fast land adjacent to the water, and that it is entitled under the lease to take all the sand and gravel not only from the shore but also from the main land itself, and that it has the right to take the entire farm away by dredging from a constantly receding bank.   With this contention we are unable to agree.   It in effect asserts that the company may at its own volition convert, what professes on its face to be a grant of a mere riparian or other right to take sand from the shore or water front of the farm, into what would practically be a grant of the farm itself.   There are no general words of description used in the lease manifesting an intention to grant the right to remove the fast land of the entire farm or of any considerable part of it.   The place from which the right is given to remove the sand is described by words importing a restricted locality, and the word "riparian" used in the alternative to describe the right itself has also a restricted and local significance.   The privilege accorded to the lessee of taking all the sand and gravel he "may desire" from a restricted area cannot rationally be construed to be one to take all or any of that material from a large area entirely outside of the locality fixed by the granting instrument as that within which the right was to be exercised. The expression "shores or water fronts" of the farm as used in the lease are words of description which must, in the absence of qualifying expressions, be taken to refer to the then existing condition of the property and cannot be enlarged by mere implication or construction to mean an ever receding shore whose recession would be caused by the lessees own action exercised at his volition to the detriment of the lessor.

The word shore as used in conveyancing when applied to tidal waters has been generally held both in the common and civil law to describe the space between high and low water marks.   *Shively* v. *Bowlby*, 152 U. S. 12; *Oakes* v. *DeLancey,* 133 N. Y. 230; *Hathaway* v. *Wilson*, 123 Mass. 361; *Church* v. *Meeker*, 34 Conn. 424; *Com.* v. *Garner*, 3 Gratt. (Va.) 677;

*Gough* v. *Bell*, 21 N. J. L. 157; *Morgan* v. *Nagodish*, 40 La. Ann. 246; 25 *A. & E. Encycl.*, 1059-60.

In a few cases the expressions shore or water front have, under special circumstances, been construed to have a wider meaning, but in a case like the present, where those words are employed to describe the physicial limits within which a privilege, whose exercise is destructive of the soil itself, may be enjoyed, we cannot consent to so construe them as to enlarge or extend their ordinary signification.

If we had before us for consideration only the plaintiffs appeal from the portion of the order limiting the operation of the injunction to the land below the high water mark we might close our opinion at this point and affirm the order, but the appeal of the defendant from the entire order requires us to pass upon the plaintiff's right to any injunction at all.

It is apparent from the record that Charles B. Boswell, at the time he made the lease to Cameron under which the plaintiff company claims, had a mere life estate in the farm as tenant by the curtesy. Conceding his right to alien his life estate by deed or lease, he could not lawfully commit waste on the land nor could he by any form of conveyance authorize anybody else to do so. *Tiedeman on Real Property*, secs. 72 to 75; *Williams on Real Property*, 24; 30 *A. & E. Encycl.*, 234; *Barton Coal Co.* v. *Cox*, 39 Md. 1; *Stonebraker* v. *Zollickoffer*, 52 Md. 154; *Zimmerman* v. *Shreve*, 59 Md. 357. Dredging and carrying away sand and gravel even from the shore of the land, to say nothing of removing the fast land and trees above high water mark, as the plaintiff asserts the right to do and the evidence shows that it has done, unquestionably injure the inheritance and constitute waste. For such conduct the lease from Boswell under which it claims can afford no warrant or furnish any title on which to base an application for an injunction to prevent interference.

The plaintiff company insists that, even if Charles B. Boswell as life tenant was not authorized to make the lease to Cameron, a full ratification of that lease by the remaindermen was made in and by their deed of June 4th, 1906, to Harlan,

under whom the defendant Smoot claims title to the farm. An inspection of that deed, of which a copy appears in the record, shows it to be a conveyance in fee of the farm from Charles B. Boswell and his children who describe themselves as the husband and children of Fannie R. Boswell, the deceased wife of Charles. At the end of the description of the land conveyed it is said to be subject to a certain mortgage "and subject also to the provisions of a lease to Angus Cameron of November 25th, 1903. See Liber No. 15, folio 82." Other libers of the Land Records of Prince George's County had already been referred to in the reference made in the deed to the title of the late Mrs. Boswell, so that the Liber No. 15 may be assumed to have been one of those records. It thus appears that, apart from the knowledge which every one is presumed to have of the contents of the public records, the deed on its face gave the grantee notice as to the nature of the title of the several grantors and the place where the particulars of the lease to Cameron could be ascertained. An inspection of the records to which the attention of the grantee was thus directed would have disclosed that the lease was made by Boswell acting in his own right only and not professing to be agent for or in any manner to bind the remaindermen.

We are unable to see how a mere reference of that character in the deed to the lease could amount to a ratification or adoption of it by the remaindermen as their act. The rational construction of the reference is that it was intended to show that the transfer by Charles B. Boswell, who was one of the grantors in the deed, of his life interest in the farm, was subject to his prior lease to Cameron. Nor should that reference to the lease be held to have any effect by way of estoppel of record upon the right of the remaindermen who were not parties to it, to convey the title to their estate in the farm to their grantee, or upon the right of the defendant Smoot, who claims under their grantee to assert and rely upon that title. "The true principle of estoppel as applicable to deeds, is to prevent circuity of action, and to compel parties to fulfill their contracts, thus a party in a deed asserting a particular fact and

thereby inducing another to contract with him, cannot by a denial of that fact compel the other party to seek redress, against his bad faith by suit but the Court will decide upon the rights of the parties without subjecting them to the delay and expense of new litigation." *Casey* v. *Inloes*, 1 Gill, 330; *Alexander* v. *Walter*, 8 Gill, 239; *Nutwell* v. *Tongue*, 22 Md. 444. Neither the action of Cameron in taking his lease nor that of the plaintiff company in taking the assignment of it from him could have been induced or influenced by the reference to the lease made in the deed to Harlan as both of those transactions antedated the making of the deed. Nor do any of the acts or transactions of the remaindermen appearing in the record afford to the plaintiff company an estoppel *in pais* upon which it can insist or rely, because it is fundamental to the validity of every such estoppel that the party setting it up must° have acted or relied to his detriment upon the facts claimed by him to effect the estoppel, and that the plaintiff does not show itself to have done. *Alexander* v. *Walter*, *supra*; *Homer* v. *Grosholz*, 38 Md. 526; *Nicholson* v. *Snyder*, 97 Md. 427.

It is unfortunate that the plaintiff company, before taking the assignment of the lease and expending so large a sum of money in securing convenient access to the farm, did not take the precaution of having the public records examined so as to ascertain the nature and extent of the lessor's title, but we cannot relieve the embarrassment of the situation by disregarding settled principles of law in passing upon its rights.

We have discussed this case upon the presumption, in favor of the plaintiff company, that the owner of land bordering on navigable water in the location of the Moxley farm could, at the date of the lease from Boswell to Cameron, grant the right to take sand and gravel from the water front or shore of his land below high water mark. At common law the owner of riparian land could not grant such a license. *Day* v. *Day*, 22 Md. 530, but under the Act of 1900, ch. 577, it became lawful for owners of land bordering on the Potomac river to do so and by the Act of 1906, ch. 426, that power

was conferred upon owners of lands bordering on any of the navigable rivers, creeks or branches of the State. The conveyances in the record locate the farm on Piscataway creek which is an arm or branch of the Potomac river, but the plat furnished us at the argument of the case locates the farm opposite Fort Hunt, Virginia, so that it may possibly be regarded as bordering on the Potomac and within the operation of the Act of 1900. We express no opinion upon this question, both because the evidence requisite to enable us to do so is insufficient and because, even assuming that an owner of riprarian land in the location of this farm had power to grant the license, Boswell did not own it but had merely a life estate in it.

It follows from what we have said that the plaintiff company was not entitled to the injunction and the entire order appealed from must be reversed on the defendants appeal and the bill dismissed.

> *Order reversed in both cases costs in both cases to be paid by the Potomac Dredging Co.*